Argued and submitted May 17; judgment of dismissal with prejudice reversed,
remanded for filing of amended complaint October 26, 2016

Dale Robert HERINCKX
and Donna Rae Herinckx,
as co-personal representatives for
the estate of Julianne Lisa Herinckx,
deceased,
*Plaintiffs-Appellants,*

*v.*

Paul SANELLE;
Terlin Patrick; and
Stancorp Financial Group, Inc.,
dba Standard Insurance Company,
an Oregon corporation,
*Defendants-Respondents.*

Washington County Circuit Court
C146451CV; A159249

385 P3d 1190

George W. Kelly argued the cause and filed the briefs for appellants.

Andrew Altschul argued the cause for respondent Stancorp Financial Group, Inc. With him on the brief were Margaret Fonberg and Buchanan Angeli Altschul & Sullivan LLP.

No appearance for respondent Paul Sanelle.

No appearance for respondent Terlin Patrick.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

## SHORR, J.

Plaintiffs appeal from a limited judgment dismissing their claim against defendant Stancorp Financial Group, Inc., dba Standard Insurance Company (Standard). Plaintiffs raise two assignments of error. First, they contend that the trial court erred by granting Standard's motion to dismiss based on its determination, as applied here, that ORS 112.515 (part of Oregon's so-called "slayer statutes") is preempted by the Employee Retirement Income Security Act of 1973 (ERISA). Because, as applied here, ORS 112.515 is "related to" an "employee benefit plan," we hold that ERISA preempts the application of ORS 112.515 in this case. Consequently, the trial court did not err in granting Standard's motion to dismiss plaintiffs' claim to establish a constructive trust, under ORS 112.515, over Standard's insurance policy proceeds.

Second, plaintiffs contend the trial court erred when it denied plaintiffs' motion to modify the order dismissing plaintiffs' claim against Standard with prejudice. Plaintiffs assert that, even if their state law constructive trust claim was preempted by ERISA, the trial court abused its discretion by dismissing their claim with prejudice because it unjustly denied them the opportunity to amend their complaint to assert an ERISA claim based, in part, on federal common law. We agree with plaintiffs. In accordance with our other cases that have examined a trial court's denial of leave to amend under similar circumstances, we conclude that the trial court erred in denying plaintiffs' motion to modify the trial court's dismissal with prejudice. Accordingly, we reverse the limited judgment and remand for plaintiffs to file an amended complaint.

When reviewing the dismissal of a case under ORCP 21 A(1), we assume the truth of all well-pleaded facts alleged in the complaint. *Doe v. Lake Oswego School District*, 353 Or 321, 323, 297 P3d 1287 (2013). As relevant, plaintiffs allege the following facts. Plaintiffs had a daughter, decedent, who was living with defendants Sanelle and Patrick. Before decedent's death, Standard provided decedent with a life insurance policy through her employer. The policy listed both Sanelle and Patrick as beneficiaries. In an

attempt to claim the life insurance policy's proceeds, Sanelle and Patrick killed decedent.[1]

Following their daughter's death, plaintiffs filed a two-claim complaint as personal representatives of their daughter's estate. That complaint included a state law claim against Standard to establish a constructive trust over the proceeds of their daughter's insurance policy, and a wrongful death claim against Sanelle and Patrick that is not at issue in this appeal. Based on the application of ORS 112.515(1), plaintiffs' constructive trust claim, if successful, would have passed the benefits of decedent's life insurance policy to plaintiffs as "the personal representative[s] of the estate of the decedent" and would have barred Sanelle and Patrick, as the "slayer[s]" of decedent, from collecting any benefits. Standard responded with an ORCP 21 A(1) motion to dismiss for lack of subject matter jurisdiction, claiming that ERISA preempts the imposition of any state-law constructive-trust remedies on employer-provided employee benefit plans.

In response, plaintiffs argued that ERISA does not preempt their state-law constructive-trust claim and its application of ORS 112.515(1) to prevent Sanelle and Patrick from recovering proceeds from decedent's life insurance policy. Further, plaintiffs requested, both in their response and at the hearing on Standard's motion, that they be granted leave to amend their complaint if the trial court granted Standard's motion to dismiss. However, the trial court granted Standard's motion and dismissed plaintiffs' claim against Standard with prejudice without addressing plaintiffs' request for leave to amend.

Shortly after the trial court granted Standard's motion to dismiss, plaintiffs renewed their argument that they should be granted leave to amend in a motion to modify the order to permit filing of an amended complaint. Plaintiffs argued that, under ORCP 21 A, the trial court had discretion to allow plaintiffs to amend their complaint to delete their state-law constructive-trust claim against Standard,

---

[1] Under our standard of review, we assume that both Sanelle and Patrick were responsible for the death of decedent; however, nothing in this opinion should be construed as resolving that fact for purposes other than this appeal.

add a pure damages claim under ORS 112.515, and add a new slayer claim under ERISA and federal common law. The trial court denied plaintiffs' motion without explanation.

On appeal, plaintiffs first assign error to the trial court's grant of Standard's motion to dismiss. Plaintiffs reassert their argument that ERISA does not preempt the application of ORS 112.515 to the allegations and claim in this case. ORS 112.515, as relevant here and as discussed further below, prohibits a life insurance beneficiary from collecting on a decedent's life insurance policy if the potential beneficiary is a "slayer" of the decedent. Standard contends, as it did below, that ERISA preempts *any* state law that would require that a constructive trust be placed on employer-provided employee benefit plans. Here, we need not reach the full extent of Standard's argument. We resolve only whether ORS 112.515 is preempted as applied here.[2]

Whether federal law preempts a state statute is a question of law, which we review for legal error. *Dept. of Human Services v. J. G.*, 260 Or App 500, 507, 317 P3d 936 (2014). Federal preemption of state law originates in the United States Constitution. Article VI, clause two, of the United States Constitution states, in part, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land * * *." In accordance with that clause, "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 555 US 70, 76, 129 S Ct 538, 172 L Ed 2d 398 (2008) (internal quotation marks omitted). To determine "the scope of a statute's pre-emptive effect," we look to "the purpose of Congress" as "the ultimate touchstone." *Id.* (internal quotation marks and brackets omitted). Congress may indicate its preemptive intention either "through a statute's express language or through its structure and purpose." *Id.* In the case of ERISA, Congress indicated its preemptive intention through the act's express text.

---

[2] Standard claims that plaintiffs failed to preserve the argument that ERISA does not preempt ORS 112.515 because Standard's motion to dismiss only addressed ERISA preemption of constructive trusts. We reject that argument without extended discussion. Whether ERISA preempts ORS 112.515 was discussed at length below by plaintiffs in open court and in their response to Standard's motion to dismiss.

ERISA is a series of statutes passed by Congress

"to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

29 USC § 1001(b). By its terms, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 USC § 1144(a). Accordingly, the issue before us on plaintiffs' first assignment of error is whether ORS 112.515, as applied here, is a state law that "relate[s] to any employee benefit plan" as described by 29 USC section 1144(a).

Under ERISA, an "employee benefit plan," or ERISA plan, includes, as relevant, "any plan, fund, or program * * * established or maintained by an employer * * * for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance * * * benefits in the event of * * * death." 29 USC § 1002(1), (3).

Here, decedent's insurance plan is an "employee benefit plan." Decedent's employer established the plan to provide "benefits in the event of * * * death." 29 USC § 1002(1).

A state law "relates to" an "employee benefit plan" if it has "an impermissible connection with ERISA plans." *Gobeille v. Liberty Mut. Ins. Co.*, ___ US ___, ___, 136 S Ct 936, 943, 194 L Ed 2d 20 (2016) (internal quotation marks omitted). A state law has an impermissible "connection with" ERISA plans where the law "governs * * * a central matter of plan administration" or "interferes with nationally uniform plan administration." *Egelhoff v. Egelhoff*, 532 US 141, 148, 121 S Ct 1322, 149 L Ed 2d 264 (2001).

In *Egelhoff*, the United States Supreme Court held that ERISA preempted a Washington statute that "provide[d] that the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce." 532 US at 143. The Court reasoned that the Washington statute

"govern[ed] * * * a central matter of plan administration" because it "govern[ed] the payment of benefits." *Id.* at 148. The Court also concluded that the statute "interfere[d] with nationally uniform plan administration" because "[p]lan administrators [could not] make payments simply by identifying the beneficiary specified by the plan documents." *Id.* Instead, the plan administrators had to "familiarize themselves with state statutes so that they [could] determine whether the named beneficiary's status ha[d] been revoked by operation of law." *Id.* at 148-49 (internal quotation marks omitted). As a result, the Court determined that Washington's statute had an impermissible "connection with" ERISA plans and was thus preempted. *Id.* at 150.

ERISA preempts ORS 112.515, as applied in this case, because that statute is a state law "related to" an "employee benefit plan." ORS 112.515(1) states, in part:

> "[P]roceeds payable under [a policy or certificate of insurance on the life of the decedent] to or for the benefit of a slayer of [the] decedent or an abuser of [the] decedent, as beneficiary * * * of the decedent * * * must be paid to the secondary beneficiary or * * * to the personal representative of the estate of the decedent."

That statute, as applied here to a life insurance policy provided through an employee benefit plan, has an "impermissible connection with" ERISA. *Gobeille*, ___ US at ___, 136 S Ct at 943 (internal quotation marks omitted). Like the statute in *Egelhoff*, ORS 112.515 both "governs * * * a central matter of plan administration" and "interferes with nationally uniform plan administration." 532 US at 148.

First, ORS 112.515 "governs * * * a central matter of plan administration." *Egelhoff*, 532 US at 148. Like the statute in *Egelhoff*, ORS 112.515 governs the payment of benefits from an ERISA plan by altering the plan's beneficiary. As was noted in *Egelhoff*, "payment of benefits" is a "central matter of plan administration." 532 US at 148.

Second, ORS 112.515 "interferes with nationally uniform plan administration." *Egelhoff*, 532 US at 148. Like the statute in *Egelhoff*, application of ORS 112.515 would mean that plan administrators "[could not] make payments simply by identifying the beneficiary specified by the plan

documents." 532 US at 148. Instead, plan administrators would be forced to "familiarize themselves with state statutes so that they [could] determine whether the named beneficiary's status ha[d] been revoked by operation of law." *Id.* at 148-49 (internal quotation marks omitted). That is true even though slayer statutes "have been adopted by nearly every State." *Id.* at 152.

Like divorce revocation statutes, slayer statutes can vary from state to state in material ways. For example, slayer statutes differ in the standard of proof necessary to forfeit beneficiary status in the absence of convictions. *Compare* ORS 112.555 (mandating the killing be established by a preponderance of the evidence), *with* Ga Code Ann § 53-1-5(d) (requiring the killing be established by clear and convincing evidence). Further, state slayer statutes may differ in their treatment of criminal convictions. *Compare* Ala Code § 43-8-253(e) (treating a judgment of conviction as conclusive when it is "final"), *with* ORS 112.555 (treating a judgment of conviction as conclusive only "[a]fter any right to appeal has been exhausted"). More notably, slayer statutes differ on what behavior is necessary for a party to forfeit their beneficiary status. *Compare* ORS 112.515(1) (denying life insurance proceeds to either a "slayer" or an "abuser of a decedent"), *with* Cal Prob Code § 252 (only denying life insurance proceeds to a person "who feloniously and intentionally kills" the decedent). And, in fact, in at least one state, decedents can choose to opt out of slayer statutes in their will. Wis Stat § 854.14(6)(b). Consequently, the application of ORS 112.515 to decedent's ERISA plan would complicate nationally uniform plan administration at least as much as the application of the divorce-revocation statute at issue in *Egelhoff*.[3]

---

[3] We note that, in *dicta*, the United States Supreme Court considered whether its decision in *Egelhoff* and the application of ERISA principles could result in the preemption of state slayer statutes. 532 US at 152. The majority decision expressly did not reach the issue, but noted that the uniformity of state slayer statutes made it "at least debatable" that they interfered with the aims of ERISA. *Id.* The dissent responded that "contrary to the Court's suggestion *** slayer statutes vary from State to State in their details just like divorce revocation statutes." *Id.* at 160 (Breyer, J., dissenting). As discussed above, we conclude that state slayer statutes do vary from state to state and, when applied to insurance policies provided through employee benefit plans, impermissibly interfere with uniform ERISA plan administration. *See also Ahmed v. Ahmed,* 158 Ohio App

As a result, because, as applied here, ORS 112.515 both "governs * * * a central matter of plan administration" and "interferes with nationally uniform plan administration," it has a "prohibited connection with ERISA plans" and "relates to" ERISA. *Egelhoff,* 532 US at 147-48. Consequently, we hold that ORS 112.515, as applied here, is preempted by ERISA. Therefore, we affirm the trial court's grant of Standard's motion to dismiss.

Plaintiffs next assign error to the trial court's denial of their motion to modify the order dismissing plaintiffs' claim against Standard with prejudice. Plaintiffs argue, as they did below, that the trial court abused its discretion when it dismissed their claim with prejudice and that they should have been permitted to amend their complaint to cure any defects raised by Standard's motion to dismiss. Below, plaintiffs postulated that they would amend their complaint to state a claim as beneficiaries under 29 USC section 1132 (a)(1)(B), a civil enforcement remedy in ERISA, to "recover benefits due to [them] under [the] terms of the plan" pursuant to the federal slayer law established in *Mutual Life Ins. Co. of New York v. Armstrong,* 117 US 591, 600, 6 S Ct 877, 29 L Ed 997 (1886) (*Mutual Life*) ("It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken."). Standard argues, in response, that the trial court's ruling was correct because none of plaintiffs' proposed amendments would have precluded the trial court's entry of judgment.[4] As explained below, we agree with plaintiffs.

We review for abuse of discretion both a trial court's decision to dismiss a case with prejudice, *Jensen v. Duboff,* 253 Or App 517, 520, 291 P3d 738 (2012), and a trial court's denial of leave to amend a complaint, *Classen v. Arete NW, LLC,* 254 Or App 216, 227, 294 P3d 520 (2012). Under that standard, we affirm a trial court's ruling if it is within the

---

3d 527, 535-36, 817 NE 2d 424, 430-31 (2004) (applying *Egelhoff* and concluding that, because of the difference in state slayer statutes, ERISA preempted the Ohio slayer statute).

[4] Standard also argues that plaintiffs' motion was rightly denied because it failed to comply with UTCR 5.070(1). We reject that argument without discussion.

range of lawful alternatives. *Jensen*, 253 Or App at 520. Further, as when we review the grant of an ORCP 21 A(1) motion to dismiss, when we review a trial court's decision to dismiss a case with prejudice and without opportunity to amend, "we assume the truth of all factual allegations in the plaintiff's complaint and all reasonable inferences that may be drawn from it." *Jensen*, 253 Or App at 520.

The decision to dismiss with prejudice or grant leave to amend should "always * * * be exercised in the furtherance of justice." *Id.* (internal quotation marks omitted). To determine if a court exceeded its discretion, "we must examine the procedural moves prior to the trial court's judgment for defendant." *Id.* (internal quotation marks omitted).

Here, in their response to Standard's motion to dismiss and at the hearing on the motion, plaintiffs asked that they be granted the opportunity to amend their complaint if the trial court granted Standard's motion to dismiss. The trial court then granted Standard's motion to dismiss with prejudice without addressing plaintiffs' request for leave to amend their complaint.

The trial court's dismissal of plaintiffs' claim with prejudice also constituted a denial of plaintiffs' request for leave to amend. *See id.* ("[T]he dismissal of the second amended complaint with prejudice also effectively denied plaintiff's pending motion for leave to file a third amended complaint."). When examining cases with similar procedural histories to this case, we have concluded that trial courts that granted motions to dismiss with prejudice abused their discretion by denying parties an opportunity to amend their complaints before entering judgment. *See, e.g., id.* at 526 (concluding that the trial court abused its discretion when dismissing an amended complaint with prejudice without giving the plaintiffs an opportunity to replead); *Caldeen Construction v. Kemp*, 248 Or App 82, 90, 273 P3d 174 (2012) (concluding that the court abused its discretion by entering judgment for defendant without granting plaintiffs an opportunity to amend their complaint). Thus, like in *Jensen* and *Caldeen Construction*, if the trial court abused its discretion in denying plaintiffs leave to amend, it also abused its discretion in dismissing plaintiffs' claim with prejudice.

ORCP 23 A governs amendments to pleadings. It states that "leave [to amend] shall be freely given when justice so requires." ORCP 23 A. To determine whether a court permissibly exercised its discretion when denying leave to amend, we balance four factors: "(1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendment." *Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000).

In this case, as a preliminary matter, the trial court was correct in denying plaintiffs leave to amend their complaint to seek only damages rather than a constructive trust under their ORS 112.515 claim. For the reasons discussed previously, all claims seeking to apply ORS 112.515 to change a life insurance policy provided in an employee benefit plan impermissibly relate to ERISA and are subject to federal preemption. In contrast, however, the trial court abused its discretion in denying plaintiffs leave to amend to add a federal slayer claim through ERISA pursuant to 29 USC section 1132(a)(1)(B) and *Mutual Life*, 117 US at 600. That is because all four *Ramsey* factors weigh in favor of granting plaintiffs leave to amend to add a claim under 29 USC section 1132(a)(1)(B).

Turning to the first *Ramsey* factor, we must examine "the nature of the proposed amendments and their relationship to the existing pleadings." 162 Or App at 145. In *Ramsey*, we held that the first factor weighed in the plaintiff's favor where "the proposed amendments were not the product of some unilateral effort by [the] petitioner to interject entirely new claims into the litigation" and, instead, "were proffered in direct response to [the] defendant's motion to strike." 162 Or App at 147. Similarly, in *Jensen*, we held that the first factor favored the plaintiff where the proposed amended complaint "allege[d] the same three claims against the same four parties as [the previous] complaint." 253 Or App at 523-24.

Here, like the amendments in both *Jensen* and *Ramsey*, plaintiffs' proposed amendment was not "the

product of some unilateral effort by [the] petitioner to inter-ject entirely new claims into the litigation." *Ramsey*, 162 Or App at 147. Instead, the proposed claim was "proffered in direct response to [Standard]'s motion" to dismiss. *Id.* That remains true even though the proposed claim is not precisely the same as the claim in the previous complaint. Plaintiffs merely seek to change their state slayer claim under ORS 112.515 to a federal slayer claim under 29 USC section 1132(a)(1)(B) and *Mutual Life*. Neither the parties nor the underlying facts have changed. Further, this was the *first* proposed amended complaint. This factor, like in *Jensen* and *Ramsey*, weighs in favor of granting plaintiffs leave to amend.

We next consider the second *Ramsey* factor—that is, what "prejudice, if any, to the opposing party" plaintiffs' proposed amendment presents. 162 Or App at 145. In *Ramsey*, we concluded there was no prejudice to the defendant where the "[d]efendant identified no particular prejudice he would suffer if the amendments [to the pleading] were allowed." *Id.* at 147. In *Jensen*, we went further, concluding that there was no prejudice to the defendants where "[t]he only purported prejudice that defendants identified was that, if plaintiff's motion to amend were granted, defendants would have to continue to defend themselves in [the] action." 253 Or App at 524.

Here, plaintiffs' proposed amendment does not result in any prejudice to Standard. Like the motions in *Jensen* and *Ramsey*, plaintiffs' motion came early in the lit-igation. Further, Standard should not be surprised that it has to defend against a federal slayer claim under 29 USC section 1132(a)(1)(B). At multiple points during this litiga-tion, Standard suggested that plaintiffs file the exact sec-tion 1132(a)(1)(B) claim that plaintiffs proposed to add to their complaint. Therefore, that factor also favors granting plaintiffs leave to amend.

We turn to the third *Ramsey* factor—"the timing of the proposed amendments and related docketing concerns." 162 Or App at 145. In *Ramsey*, the plaintiff attempted to amend his pleading 17 days before trial. *Id.* at 148. We con-cluded that that timeframe, with nothing further, would not

have "materially implicated the trial court's docket management." *Id.* As a result, we held that this factor favored the plaintiff. *Id.* Similarly, in *Jensen*, we held that the third factor favored the plaintiff where the "[p]laintiff moved for leave to file a[n] * * * amended complaint before * * * a trial date had been set." 253 Or App at 524.

Here, as in *Ramsey* and *Jensen*, the timing of the proposed amendments is not a concern. Plaintiffs first notified the trial court of their intention to seek leave to amend their complaint before the trial court granted Standard's motion to dismiss. Following the trial court's grant of Standard's motion to dismiss, plaintiffs moved to modify the trial court's order to allow plaintiffs to seek leave to amend their complaint. Plaintiffs' motion to modify to seek leave to amend—plaintiffs' last attempt to amend their complaint— was filed much earlier than the timeframe in *Ramsey*. In fact, like in *Jensen*, a trial date had not been set at the time of plaintiffs' motion. Thus, the plaintiffs' amendment would not have "implicated the trial court's docket management." *Ramsey*, 162 Or App at 148. Therefore, this factor also weighs in favor of plaintiffs.

Finally, we examine the fourth *Ramsey* factor—"the colorable merit of the proposed amendment." 162 Or App at 145. In *Ramsey*, we held that the fourth factor was neutral where nothing in the record suggested the likely success of the claims, but "[t]he amendments, if allowed, would, at least, have eliminated a fatal defect and rendered those claims facially legally sufficient." *Id.* Similarly, in *Jensen*, we held that the plaintiff's proposed amendment "ha[d] at least colorable merit" where "[i]t attempt[ed] to cure some of the defects that [the] defendants identified in the [previous] complaint." 253 Or App at 524-25.

Here, plaintiffs' proposed 29 USC section 1132 (a)(1)(B) claim, at least to the extent it relies exclusively on ERISA and federal common law, is like the claim in *Jensen* in that it has "colorable merit." The only identified defect in plaintiffs' original state-law claim based on ORS 112.515 was that it was preempted by ERISA. However, federal courts have recognized that a plaintiff may pursue an ERISA claim in similar circumstances and that federal common law may

similarly prevent a defendant "slayer" from receiving life insurance benefits due to a defendant's unlawful conduct. *See, e.g., Standard Ins. Co. v. Coons,* 141 F3d 1179, 1179 (9th Cir 1998) (recognizing that a federal slayer law exists within federal common law and applies to ERISA cases); *Nale v. Ford Motor Co. UAW Ret. Plan,* 703 F Supp 2d 714, 722 (ED Mich 2010) (same); *Connecticut Gen. Life Ins. Co. v. Riner,* 351 F Supp 2d 492, 497 (WD Va), *aff'd sub nom Connecticut Gen. Life Ins. Co v. Estate of Riner,* 142 Fed Appx 690 (4th Cir 2005) (same). Indeed, as noted above, a federal slayer law has been recognized by the United States Supreme Court dating back to 1886. *Mutual Life,* 117 US at 600.

Further, an ERISA claim under 29 USC section 1132(a)(1)(B) can be brought in Oregon state court.[5] 29 USC § 1132(e)(1) ("State courts of competent jurisdiction * * * shall have concurrent jurisdiction of actions under [29 USC section 1132(a)(1)(B)]."); *Paddack v. Furtick,* 78 Or App 49, 53, 714 P2d 1068, *rev den,* 301 Or 240 (1986) (noting federal courts have exclusive jurisdiction of ERISA claims, "except for those [claims] brought pursuant to [29 USC section 1132(a)(1)(B)] by a participant or beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan'" (quoting 29 USC § 1132(a)(1)(B))). Thus, assuming the facts in the complaint as true, as we must given our standard of review, plaintiffs' proposed 29 USC section 1132(a)(1)(B) claim has at least colorable merit.

In addition, even if the merit of the proposed claim was questionable, the amendment is still not meritless under *Ramsey.* Like the proposed amendments in both *Jensen* and *Ramsey,* plaintiffs' amendment "attempts to cure * * * the defects that [Standard] identified in the * * * complaint." *Jensen,* 253 Or App at 525. Therefore, this factor also favors granting plaintiffs leave to amend.

Every factor of the *Ramsey* test favors granting plaintiffs leave to amend. Plaintiffs' proposed amendment is

---

[5] Even though Oregon courts have concurrent jurisdiction over plaintiffs' proposed claim, removal of the claim to federal court may be proper under 28 USC sections 1441 and 1446.

similar to and contains the same parties as its original claim. The proposed amendment does not prejudice Standard. Plaintiffs' motion to modify to seek leave to amend was timely. Finally, plaintiffs' proposed ERISA claim has colorable merit. Consequently, the trial court's de facto denial of plaintiffs' request for leave to amend was an abuse of discretion. That abuse of discretion applies, as well, to the trial court's decision to dismiss plaintiffs' claim with prejudice. Therefore, the court erred in denying plaintiffs' motion to modify the trial court's order granting Standard's motion to dismiss with prejudice. As a result, we reverse the limited judgment dismissing plaintiffs' state-law constructive-trust claim, which applies ORS 112.515, and remand to permit plaintiffs to file an amended complaint to the extent consistent with this opinion.[6]

Judgment of dismissal with prejudice reversed; remanded for filing of amended complaint.

---

[6] We conclude only that plaintiffs' proposed federal slayer claim alleged through ERISA and 29 USC section 1132(a)(1)(B) is "colorable" and express no further opinion on the merits of such claim.