In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2022

LABORERS' PENSION FUND and
JAMES S. JORGENSEN, Administrator of the Fund,

*Interpleader Plaintiffs,*

*v.*

ANKA V. MISCEVIC,

*Interpleader Defendant-Cross/Plaintiff-Appellant,*

*v.*

ESTATE OF M.M., and
SNEZANA J. KAPLAREVIC, Guardian of the Estate,

*Cross/Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-5865 — **Charles P. Kocoras**, *Judge.*

ARGUED JANUARY 9, 2018 — DECIDED JANUARY 29, 2018

Before FLAUM, KANNE, and ROVNER, *Circuit Judges.*

FLAUM, *Circuit Judge*. In January 2014, Anka Miscevic ("Anka") killed her husband, Zeljko Miscevic ("Zeljko"). At a state criminal proceeding, the court determined that Anka intended to kill Zeljko without legal justification. However, the court also determined that Anka was insane at the time of the killing and found her not guilty of first degree murder by reason of insanity. Following the criminal trial, the Laborers' Pension Fund (the "Fund") brought an interpleader action to determine the proper beneficiary of Zeljko's pension benefits. Anka claimed she was entitled to a Surviving Spouse Pension. The Estate of M.M. (Anka and Zeljko's child) argued that Anka was barred from recovering from the Fund by the Illinois slayer statute. After both parties filed motions seeking a judgment on the pleadings, the district court ruled in favor of the Estate of M.M. It determined that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, did not preempt the Illinois slayer statute, and that the statute barred even those found not guilty by reason of insanity from recovering from the deceased. We affirm.

## I. Background

The factual background is undisputed. On January 9, 2014, Anka killed her husband Zeljko at their home. The State of Illinois charged Anka with first degree murder. At the criminal trial, the parties stipulated to the details: Anka stabbed Zeljko with a large kitchen knife while he was asleep; Anka struck Zeljko in the head with a baseball bat in order to prevent him from calling the police; and Anka told the police that she loved Zeljko but killed him because "she feared that he intended to kill her and her family." Anka has a history of serious mental illness, including paranoid delusions, and has

received mental health treatment. Anka and Zeljko had one living child, thirteen-year-old M.M.

At trial, Judge Liam Brennan of the Circuit Court of Du-Page County determined that the state established each element of first degree murder beyond a reasonable doubt. Specifically, he found that "Anka Miscevic intended to kill Zeljko Miscevic without legal justification." Judge Brennan also determined, however, that Anka established by clear and convincing evidence that she was insane at the time of the offense. Therefore, Judge Brennan found Anka not guilty by reason of insanity.

Prior to his death, Zeljko worked as a union laborer and earned a vested pension benefit from the Fund, to be paid to Zeljko upon his retirement as monthly annuity for his life. According to the Fund's governing documents, when a married participant dies before the benefit commences, the participant's spouse receives a Surviving Spouse Pension, a monthly annuity payable for the spouse's life. Where the deceased does not have a surviving spouse, the individual's minor child receives a Minor Child Benefit, a monthly benefit payable until the child reaches the age of twenty-one. After Zeljko's death, both Anka and the Estate of M.M. sought to recover Zeljko's pension benefits. The Fund and its administrator filed an interpleader action to determine the proper beneficiary.

Neither the Fund's documents nor ERISA address whether a claimant who killed the Fund participant can receive a benefit. However, a section of the Illinois Probate Act of 1975, known as the "slayer statute," provides that "[a] person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death." 755 Ill. Comp. Stat. 5/2-6. A determination

of whether the statute applies "may be made by any court of competent jurisdiction separate and apart from any criminal proceeding arising from the death." *Id.* In such a situation, "[t]he property, benefit, or other interest shall pass as if the person causing the death died before the decedent." *Id.*

Both Anka and the Estate of M.M. moved for judgment on the pleadings. The Estate of M.M. argued that the Illinois slayer statute barred Anka from recovery. Anka claimed that ERISA preempts the slayer statute, or alternatively, that the statute does not apply because she was found not guilty of Zeljko's murder by reason of insanity. On March 24, 2017, the district court granted the Estate of M.M.'s motion for judgment on the pleadings, concluding that ERISA does not preempt the Illinois slayer statute and that the slayer statute barred Anka from receiving benefits from the Fund. This appeal followed.

## II. Discussion

"We review de novo the district court's order granting judgment on the pleadings." *Int'l Union of Operating Eng'rs Local 139 v. Schimel*, 863 F.3d 674, 677 (7th Cir. 2017). Likewise, we review de novo a district court's preemption ruling. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011).

### A. ERISA Preemption

ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" described by ERISA. 29 U.S.C. § 1144(a). The key to determining whether the preemption clause applies is the interpretation of the words "relate to." *Kolbe*, 657 F.3d at 504. "A law 'relates to' an

employee benefit plan if it has a connection with or reference to such a plan." *Id*. Therefore, ERISA "preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Id.* (quoting *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998)).

While ERISA is expansive, it does not preempt a state law claim "merely because it requires a cursory examination of ERISA plan provisions." *Id.* (quoting *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002)). Indeed, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983). And where the state law is "a traditional area of state regulation," the party seeking preemption must overcome "'the starting presumption that Congress does not intend to supplant state law.'" *Biondi*, 303 F.3d at 775 (quoting *De Buono v. NYSLA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)). In short:

> [T]o determine whether a state law has the forbidden connection [to ERISA], we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.

*Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (internal quotation marks omitted) (quoting *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)); *see also Kolbe*, 657 F.3d at 504 ("The question whether a certain state action is preempted by federal law is one of congressional intent." (quoting *Ingsersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–38 (1990))).

In *Egelhoff*, the Supreme Court held that ERISA preempted a Washington statute which provided that a dissolved or invalidated marriage would revoke earlier beneficiary designations to the former spouse.[1] 532 U.S. at 144–152. First, the Court held that "[t]he statute [bound] ERISA plan administrators to a particular choice of rules for determining beneficiary status," noting that "[t]he administrators [were required to] pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* at 147. Second, the Court determined that the statute "govern[ed] the payment of benefits, a central matter of plan administration." *Id.* at 148. Finally, the Court stressed that the statute "interfere[d] with nationally uniform plan administration" because "[u]niformity is impossible … if plans are subject to different legal obligations in different States."[2] *Id*. In sum, the Court

---

[1] At the time, that statute stated:

> If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.

*Egelhoff*, 532 U.S. at 144 (quoting Wash. Rev. Code § 11.07.010(2)(a) (1994)). The statute applies to "all nonprobate assets," including an "employee benefit plan." *Id.* (quoting Wash. Rev. Code § 11.07.010(1), (5)(a)).

[2] The Court noted that plan administrators would be required to "familiarize themselves with state statutes so that they can determine whether the named beneficiary's status ha[d] been 'revoked' by operation of law." *Egelhoff*, 532 U.S. at 148–49.

concluded that the Washington statute "directly conflict[ed] with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents," and therefore, "impose[d] 'precisely the burden that ERISA preemption was intended to avoid.'" *Id.* at 150 (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 10 (1987)).

Anka argues that the Court's opinion in *Egelhoff* "compels a conclusion that [the Illinois slayer statute] is preempted." She maintains that based on *Egelhoff*, "the only logical conclusion that may be drawn with respect to [the Illinois slayer statute] is that it is preempted pursuant to [ERISA] as a law that 'relates to' employee benefit plans." We disagree.

Critically, the Court in *Egelhoff* commented that slayer statutes present a different question than the Washington statute at issue in that case. The Court acknowledged that, "[i]n the ERISA context, … 'slayer' statutes could revoke the beneficiary status of someone who murdered a plan participant." *Id.* at 152. Nevertheless, the Court stressed "that the principle underlying the statutes—which have been adopted by nearly every State—is well established in the law and has a long historical pedigree predating ERISA." *Id.* It opined that, "because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable." *Id.* Eight years later, the Court again declined to address whether ERISA preempts state slayer laws. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 304 n.14 (2009).

Since *Egelhoff*, no federal court of appeals has faced the question of whether ERISA preempts state slayer statutes.[3]

---

[3] Prior to *Egelhoff*, in an unpublished opinion, the Ninth Circuit declined to resolve whether ERISA preempted the Oregon slayer statute "because

But many district courts have. The majority of those courts, though ultimately declining to resolve the question, have noted that *Egelhoff* seems to suggest that ERISA does not preempt state slayer statutes.[4] And a few courts have explicitly held that ERISA does not preempt a state slayer statute. *See, e.g.*, *Hartford Life & Accident Ins. Co. v. Rogers*, No. 3:13-cv-101, 2014 WL 5847548, at *2–3 (D.N.D. Nov. 12, 2014) ("ERISA does not preempt North Dakota's slayer statute because awarding benefits to the defendant … is contrary to federal common law and congressional intent for ERISA."); *Union Sec. Life Ins. Co. of N.Y. v. JJG-1994*, No. 1:10-cv-00369, 2011 WL 3737277, at *2 (N.D.N.Y. Aug. 24, 2011) (concluding that "New York's slayer rule … is not preempted by ERISA" because it is "of general application … [and its] effect on ERISA is incidental" (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989))); *Mack v. Estate of Mack*, 206 P.3d 98, 110 (Nev. 2009) ("We conclude that the Nevada slayer statute is not preempted by ERISA, as the application of this statute will not

---

the outcome of [the] case would be the same either way." *Standard Ins. Co. v. Coons*, No. 96-36299, 1998 WL 115579, at *1 (9th Cir. Mar. 16, 1998).

[4] *See, e.g.*, *Life Ins. Co. of N. Am. v. Camm*, No. 4:02-cv-00106, 2007 WL 2316480, at *4–5 (S.D. Ind. Aug. 6, 2007); *Prudential Ins. Co. of Am. v. Davidson*, No. 1:14-cv-1879, 2015 WL 4734746, at *7 n.7 (N.D. Ga. Aug. 10, 2015); *Bean v. Alcorta*, No. SA:14-cv-604, 2015 WL 4164787, at *7 (W.D. Tex. July 9, 2015); *Box v. Goodyear Tire & Rubber Co.*, 51 F. Supp. 3d 1147, 1153 & n.3 (N.D. Ala. 2014); *In re Estate of Burkland*, No. 11-5024, 2012 WL 13550, at *6 & n.8 (E.D. Pa. Jan. 3, 2012); *UNUM Life Ins. Co. of Am. v. Mack*, No. 3:04-cv-247, 2011 WL 2470668, at *1 (W.D.N.C. June 21, 2011); *Honeywell Sav. & Ownership Plan v. Jicha*, No. 08-4265, 2010 WL 276237, at *5 (D.N.J. Jan. 15, 2010); *Nale v. Ford Motor Co. UAW Ret. Plan*, 703 F. Supp. 2d 714, 722 (E.D. Mich. 2010); *Atwater v. Nortel Networks, Inc.*, 388 F. Supp. 2d 610, 614–15 (M.D.N.C. 2005); *Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris*, 217 F. Supp. 2d 759, 761–62 (E.D. Tex. 2002).

affect the determination of an employee's eligibility for bene-fits or the impact on the method of calculating benefits due." (citation omitted)).[5] At least two courts also reached this con-clusion prior to *Egelhoff*. *See New Orleans Elec. Pension Fund v. Newman*, 784 F. Supp. 1233, 1236 (E.D. La. 1992); *Mendez-Bellido v. Bd. of Trs. of Div. 1181, A.T.U. N.Y. Emps. Pension Fund & Plan*, 709 F. Supp. 329, 331 (E.D.N.Y. 1989).

We agree with those courts that have held that ERISA does not preempt slayer statutes. Slayer laws are an aspect of fam-ily law, a traditional area of state regulation. *See Egelhoff*, 532 U.S. at 152 ("[T]he principle underlying [slayer] statutes … is well established in the law."); *Manning v. Hayes*, 212 F.3d 866, 872 (5th Cir. 2000) (noting that "the law of family relations," including the "fairly uniform set of state laws" describing the

---

[5] Anka points to just two state court opinions that hold that ERISA preempts a state slayer statute. *See Herinckx v. Sanelle*, 385 P.3d 1190, 1195–97 (Or. Ct. App. 2016) (holding that, because the statute "both 'governs … a central matter of plan administration' and 'interferes with nationally uni-form plan administration,' it has a 'prohibited connection with ERISA plans' and 'relates to' ERISA." (alteration in original) (quoting *Egelhoff*, 532 U.S. at 147–48)); *Ahmed v. Ahmed*, 817 N.E.2d 424, 431 (Ohio Ct. App. 2004) (holding that slayer statutes "'implicate[] an area of core ERISA concern' by obliging ERISA plan administrators to 'pay benefits to the beneficiaries chosen by state law, rather than those identified in the plan documents.'" (quoting *Egelhoff*, 532 U.S. at 147)). It is true, as those courts point out, that states' slayer statutes have at least some variety. *See Ahmed*, 817 N.E.2d at 430–31; *Herinckx*, 385 P.3d 1190, 1196–97. But we disagree with the conclu-sion that state slayer statutes interfere with the nationally uniform plan administration. Indeed, the *Ahmed* court's view that, "[f]or all intents and purposes, slayer statutes affect the administration of ERISA plans in the same manner as the statute discussed in *Egelhoff*," 817 N.E.2d at 430, is puzzling given that *Egelhoff* suggested that slayer statutes do *not* affect ERISA in the same way as the statute in that case. *See* 532 U.S. at 152.

slayer law principle, has "traditionally been a fairly sacro-
sanct enclave of state law"). Thus, to demonstrate preemp-
tion, Anka "bears '[a] considerable burden'" and must over-
come the "starting presumption" that Congress did not in-
tend to supplant this "traditional area of state regulation."
*Biondi*, 303 F.3d at 775 (quoting *De Buono*, 520 U.S. at 814); *see
also Egelhoff*, 532 U.S. at 151 ("There is indeed a presumption
against pre-emption in areas of traditional state regulation
such as family law.").

Anka cannot overcome that presumption. In *Egelhoff*, the
Court held that the "presumption [was] overcome" because
"Congress ha[d] made clear its desire for preemption." 532
U.S. at 151. Specifically, the Court held that "the Washington
statute ha[d] a prohibited connection with ERISA plans"; it
"implicate[d] an area of core ERISA concern" and "inter-
fere[d] with nationally uniform plan administration." *Id.* at
147–48. Here, in contrast, Anka failed to show that Congress
intended to preempt ERISA. Unlike the Washington statute at
issue in *Egelhoff*, the axiom that an individual who kills a plan
participant cannot recover plan benefits is a well-established
legal principle which predates ERISA. *Id.* at 152. Indeed, as
courts have stated, "Congress could not have intended ERISA
to allow one spouse to recover benefits after intentionally kill-
ing the other spouse." *Conn. Gen. Life Ins. Co. v. Riner*, 351 F.
Supp. 2d 492, 497 (W.D. Va. 2005), *aff'd*, 142 F. App'x 690 (4th
Cir. 2005); *see also Hartford Life & Acc. Ins. Co.*, 2014 WL
5847548, at *2; *Admin. Comm. for the H.E.B. Inv. & Ret. Plan v.
Harris*, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002). Accordingly,
we hold, consistent with the Court's dicta in *Egelhoff*, that
ERISA does not preempt the Illinois slayer statute.

### B. The Illinois Slayer Statute

Because ERISA does not preempt the Illinois slayer statute, we must next determine whether, as a matter of Illinois law, the slayer statute applies where the deceased was killed by an individual found not guilty by reason of insanity. The Illinois slayer statute provides that "[a] person who *intentionally* and *unjustifiably* causes the death of another shall not receive any property, benefit, or other interest by reason of the death." 755 Ill. Comp. Stat. 5/2-6 (emphases added). Thus, our task is to determine whether Anka, who was found not guilty by reason of insanity at a criminal proceeding, "intentionally" and "unjustifiably" caused Zeljko's death.

We "must defer to a state court's interpretation of the state's statute." *Williams v. Duckworth*, 738 F.2d 828, 833 (7th Cir. 1984); *see also L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 574 (7th Cir. 1993), *as amended on denial of reh'g* (Dec. 8, 1993), *and abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377 (2014) ("Of course, federal courts are bound to state court precedents in interpreting state law."). "In the absence of a decision by the highest state court, … [d]ecisions of intermediate appellate state courts generally control unless there are persuasive indications that the highest state court would decide the issue differently." *L.S. Health & Son*, 9 F.3d at 574. While the Illinois Supreme Court has not spoken on whether the current version of the Illinois slayer statute applies to an individual found not guilty of murder by reason of insanity, the Appellate Court of Illinois squarely addressed the issue in *Dougherty v. Cole*, 934 N.E.2d 16 (Ill. App. Ct. 2010).

The factual scenario in *Dougherty* is much the same as the one presented here. After stabbing his mother to death, a defendant testified during his criminal trial that he acted "at the direction of a voice inside his head" because that voice "'told' [him] she was the enemy." *Id.* at 21. The criminal trial court determined that the defendant "intended to kill [his mother] but lacked criminal intent due to mental illness," as "he was incapable of appreciating the criminality of his conduct." *Id.* It thus held he was not guilty by reason of insanity. *Id.* Later, the Appellate Court of Illinois was tasked to determine whether the Illinois slayer statute barred the defendant from inheriting from his deceased mother.

The court first examined the Illinois slayer rule's history. It noted that until 1983, the statute stated: "[a] person who is *convicted* of the murder of another shall not inherit from the murdered person." *Id.* at 19 (emphasis added). Thus, based on pre-1983 Illinois law, "[w]here an insane beneficiary … kill[ed] the assured under such circumstances as would cause the killing to be murder if the beneficiary were sane, such killing [did] not cause a forfeiture of the policy, nor bar[red] his right to recovery for the insurance money." *Blair v. Travelers Ins. Co.*, 174 N.E.2d 209, 211 (Ill. App. Ct. 1961) (alteration in original) (quoting *Holdom v. Grand Lodge of Ancient Order of United Workmen*, 43 N.E. 772, 774 (Ill. 1895)); *see also Lincoln Nat. Life Ins. Co. v. Johnson*, 669 F. Supp. 201, 203 (N.D. Ill. 1987) (concluding, based on pre-1983 Illinois law, that "it is clear that the murderous beneficiary rule … [did] not apply where the killer was insane at the time of the killing").[6]

---

[6] Although *Johnson* was decided in 1987, the killing at issue in that case occurred in 1982, so the pre-1983 rule for insane killers applied.

In 1983, the statute was amended to its current form. *Dougherty*, 934 N.E.2d at 19. According to the court, "[t]his change significantly broadened the scope of beneficiaries who fell under the statute from only those convicted of murder to anyone who intentionally and unjustifiably causes a death, without regard to whether a criminal conviction results therefrom." *Id.* at 20; *see also In re Estate of Vallerius*, 629 N.E.2d 1185, 1188 (Ill. App. Ct. 1994) ("Obviously, the statute as amended in 1983 is, by design, much broader and more comprehensive …."); *In re Estate of Hook*, 566 N.E.2d 759, 767 (Ill. App. Ct. 1991) ("[W]hile the prior [slayer statute] required conviction of the murder of another before a person could be barred from inheriting or receiving distribution from the estate of the murdered decedent, conviction of first or second degree murder under the present Act is not required …." (citations omitted)).[7]

The court in *Dougherty* also examined the legislative history of the 1983 amendment, and noted that one representative "appear[ed] to make the point that the law at the time prohibited a convicted killer from inheriting, and the amendment to the law would extend the bar from taking to acquitted, insane killers who killed intentionally and unjustifiably." 934 N.E.2d at 22. The court thus determined that by passing the amendment, the Illinois legislature superseded the prior slayer rule regarding insane killers. *Id.* at 20; *see also State Farm Life Ins. Co. v. Smith*, 363 N.E.2d 785, 786 (Ill. 1977). In sum, the

---

[7] *But see Johnson*, 669 F. Supp. at 203 n.1 (opining that the 1983 amendment "appears … not to have significantly altered the prior law on this subject"); *State Farm Life Ins. Co. v. Davidson*, 495 N.E.2d 520, 521 (Ill. App. Ct. 1986) ("[T]he amended version of [the slayer statute] in no way alters prior law, but is rather a legislative codification of Illinois decisions.").

court held that "[w]here … an individual was insane for criminal purposes but nevertheless cognizant he was killing a person, the Slayer Statute will prevent him from benefitting from his actions." *Dougherty*, 934 N.E.2d at 22.

There is no evidence that the Illinois Supreme Court would disagree with the *Dougherty* court's analysis. Indeed, a textual examination of the Illinois slayer statute and the Illinois insanity statute leads to the same conclusion.[8] The slayer statute applies to bar recovery from any person who "*intentionally* and *unjustifiably* causes the death of another." 755 Ill. Comp. Stat. 5/2-6 (emphases added). And the Illinois insanity statute provides that "[a] person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, *he lacks substantial capacity to appreciate the criminality of his conduct*." 720 Ill. Comp. Stat. 5/6-2 (emphasis added). Put simply, an individual may not appreciate the criminality of her conduct, but still have "intentionally" and "unjustifiably" caused a death. Indeed, in this case, the judge at Anka's criminal trial made an explicit finding that Anka "intended" to murder Zeljko "without justification," despite concluding Anka was not guilty by reason of insanity.

The district court's conclusion in this regard is supported by the facts. First, Anka *intended* to kill Zeljko. As the district

---

[8] It is true that the Illinois legislature could have been more specific. For example, the Ohio slayer statute states that "no person who is convicted of, pleads guilty to, *or is found not guilty by reason of insanity* of [murder] … shall in any way benefit by the death." Ohio Rev. Code. Ann. § 2105.19(A) (emphasis added). But contrary to Anka's suggestion, the mere fact that the Illinois statute does not specifically "address the situation of acquittal by reason of insanity" does not mean that the statute does not encompass such a situation.

court properly reasoned, in analyzing the intent requirement of the Illinois slayer statute, "we do not consider criminal intent ('mens rea'), we consider civil intent. Civil intent only requires showing that a person intended his or her actions; there is no requirement that the person have knowledge that his or her actions were wrongful." *Laborers' Pension Fund v. Miscevic*, No. 1:16-cv-5865, 2017 WL 5904664, at *1 (N.D. Ill. Mar. 24, 2017); *accord Osman v. Osman*, 737 S.E.2d 876, 880 (Va. 2013). Here, Anka intentionally stabbed Zeljko in his sleep and intentionally hit Zeljko in the head with a baseball bat to prevent him from calling the police. To be sure, like the killer in *Dougherty*, Anka was unable to appreciate the criminality of her conduct. But also like the killer in *Dougherty*, Anka intended her actions.

Second, the killing was *unjustifiable*. An insanity defense is an "excuse" defense, not a "justification" defense, and "[c]riminal law theorists have long distinguished between [these] two types of affirmative defenses." Russell D. Covey, *Temporary Insanity: The Strange Life and Times of the Perfect Defense*, 91 B.U. L. Rev. 1597, 1632 (2011). In fact, "insanity and justification are directly at odds." *Id.* at 1641. "Justification … suggests praise for persons who are able to see situations clearly and exercise sound judgment under difficult circumstances. Insanity suggests tolerance or empathy for those who cannot see clearly at all." *Id.* at 1642. Put another way, justification defenses, like self-defense, allow "action which society otherwise seeks to prevent [to] become[] permissible under the circumstances." *People v. Allegri*, 487 N.E.2d 606, 608 (Ill. 1985). In contrast, excuse defenses, like insanity, "do[] not turn unacceptable behavior into permissible conduct, but only excuse[] the individual from criminal punishment for having violated a penal statute." *Id.*; *see also Osman*, 737 S.E.2d at 880–

81 ("[A] person who has committed a justifiable homicide is not a person who has committed a 'wrong' .... A person who committed an excusable homicide, however, may have committed a wrong in the initial provocation."). Thus, while Anka's killing is excused because she "lack[ed] substantial capacity to appreciate the criminality of [her] conduct," it is not justified. *See* 720 Ill. Comp. Stat. 5/6-2.

Anka seeks to save her argument by asking us to look to other state courts. States are split as to "whether the insanity defense to criminal liability also applies as a defense to the application of the slayer statute." *Boyd v. Boyd*, 149 F. Supp. 3d 1331, 1336 (N.D. Ala. 2016) (declining to reach the issue). On the one hand, several states have determined that a finding of not guilty by reason of insanity negates a bar to inheritance. *See, e.g.*, *In re Armstrong*, 170 So.3d 510, 516 (Miss. 2015) ("Because an insane person lacks the requisite ability to willfully kill another person, the Slayer Statute is not applicable in cases where the killer is determined to be insane at the time of killing."); *In re Valamudi Estate*, 443 A.2d 1113, 1117 (N.J. Super. Ct. Law Div. 1982) ("[T]he perpetrator of a homicidal act committed while legally insane cannot be, as a matter of law, one 'who intentionally kills' within the meaning of [the New Jersey slayer statute]."); *Simon v. Dibble*, 380 S.W.2d 898, 899 (Tex. Civ. App. 1964) (concluding that an insane person is "not capable of willfully taking [a] life").[9]

---

[9] In other instances where a state court determined a slayer statute did not apply to individuals found not guilty by reason of insanity, the state's statute had more restrictive requirements than Illinois. One required a killing to be intentional *and felonious*. *See, e.g., Ford v. Ford*, 512 A.2d 389, 397–99 (Md. 1986). Other states required a killing to be intentional (or willful) *and unlawful*. *See, e.g., In re Estate of Brumage*, 460 So.2d 989, 990–91 (Fla. Dist.

On the other hand, other state courts have held that their slayer statutes do bar individuals found not guilty by reason of insanity from recovering benefits. *See, e.g.*, *Osman*, 737 S.E.2d at 879–80 (concluding that even though the defendant "avoided criminal sanctions because, due to his mental illness, he did not understand his actions were wrongful," he still "intended his actions"); *In re Estate of Kissinger*, 206 P.3d 665, 671 (Wash. 2009) (en banc) (holding that the slayer statute applied because "the trial court made very specific findings of fact and conclusions of law and determined that [the individual] acted with premediated intent").

Ultimately, regardless of other state courts' interpretations of other states' slayer statutes, we are tasked with determining how the Illinois Supreme Court would interpret the Illinois slayer statute. In *Dougherty*, the Appellate Court of Illinois issued a clear and well-reasoned opinion: the Illinois slayer statute applies to bar recovery by individuals who committed a killing but were found not guilty of murder by reason of insanity. We have no reason to believe that the Illinois Supreme Court would disagree with this decision. Therefore, we conclude the Illinois slayer statute bars Anka from recovering from Zeljko's pension benefits.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

Ct. App. 1984); *Estates of Ladd v. Ladd*, 153 Cal. Rptr. 888, 891–94 (Ct. App. 1979); *Quick v. United Benefit Life Ins. Co.*, 213 S.E.2d 563, 567 (N.C. 1975). And some states required the killer to be *criminally convicted*. *See, e.g.*, *Turner v. Estate of Turner*, 454 N.E.2d 1247, 1252 (Ind. Ct. App. 1983); *In re Hoffman's Estate*, 39 Pa. D. & C. 208, 209 (Orphans' Ct. 1940).