In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 23-2788

NORTHWESTERN ILLINOIS AREA
AGENCY ON AGING,

*Plaintiff-Appellant*,

*v.*

PAULA BASTA,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:22-cv-50070 — **Philip G. Reinhard**, *Judge.*

———————————

ARGUED SEPTEMBER 18, 2024 — DECIDED JULY 23, 2025

———————————

Before RIPPLE, JACKSON-AKIWUMI, and KOLAR, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. The Older Americans Act (OAA) establishes funding mechanisms and an administrative framework to help states provide healthcare, housing, and community services for older persons. 42 U.S.C. § 3001 *et seq*. States must jump through several hoops before securing OAA funding, including submitting a state plan, designating

a state agency, and geographically dividing the state into distinct planning and service areas. *See* 42 U.S.C. § 3027; 42 U.S.C. § 3025(a)(1). Then, for each service area, states must designate a "public or private nonprofit … as the area agency." 42 U.S.C. § 3025(a)(2). At the heart of this case is whether those "area agencies" can sue to enforce OAA provisions and related Illinois state laws.

One such area agency, the Northwestern Illinois Area Agency on Aging (NIAAA), filed state and federal suits against Paula Basta, the former Director of the Illinois Department on Aging (IDA). NIAAA's lawsuits alleged that Basta, in her personal and official capacities, deprived it and others of rights guaranteed by Illinois law and the OAA. Specifically, the lawsuits alleged that Basta unlawfully refused to hold hearings on three administrative petitions that NIAAA filed.

Ultimately, NIAAA lost both suits. The Illinois Supreme Court first ruled in Basta's favor. Then, the federal district court dismissed NIAAA's suit on the grounds that it was time-barred and failed to state a claim. After requesting entry of a final judgment, NIAAA brought this appeal raising a host of issues.

We find no error and affirm across the board.

## I

We begin with the facts. At the pleadings stage, we accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in NIAAA's favor. *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 878 (7th Cir. 2022).

### A. Administrative Background

As noted above, the Older Americans Act (OAA) requires states to take certain steps to designate area agencies responsible for providing services to senior citizens. Should states fail to comply with those requirements, the federal government can take remedial measures, such as terminating funding. *See, e.g.*, 42 U.S.C. § 3027(d). Area agencies, in turn, serve as the "public advocate[s] for the development or enhancement of comprehensive and coordinated community-based systems of services in each community throughout and specific to each planning and service area." 45 C.F.R. § 1321.61(a); *see also* 42 U.S.C. § 3025(b)(5). Area agencies must develop a plan to provide services within their designated area and then submit that plan to state authorities. *See* 42 U.S.C. § 3026(a).

The Illinois Act on Aging designates the Illinois Department on Aging (IDA) as the "single State agency for receiving and disbursing federal funds made available under the 'Older Americans Act.'" 20 ILCS 105/4. The IDA is responsible for complying with the OAA's provisions and "[a]ssisting area agencies on aging in the development of comprehensive and coordinated service delivery systems throughout the State." 89 Ill. Admin. Code § 230.10(a)(4). NIAAA is one such agency, which the IDA assigned to cover the state's nine northwesternmost counties. Although an independent nonprofit, NIAAA receives more than ninety percent of its funding from the IDA.

Previously, Illinois regulations required the IDA to provide agencies like NIAAA an opportunity for a hearing when the IDA "propose[d] to disapprove the area plan or any amendment to the area plan … or withdraw from the agency

designation as an [area agency]," when "any eligible appli-
cant for designation as a planning and service area under the
provisions of [the Act]" has been denied, or for "any nutrition
project that an area agency proposes to defund." *Nyhammer v.
Basta*, 215 N.E.3d 935, 948 (Ill. 2022) (citing 89 Ill. Admin. Code
§ 230.410 amended at 5 Ill. Reg. 3722 (eff. Mar. 31, 1981), re-
numbered at 7 Ill. Reg. 5178 (eff. July 27, 1983)). That regula-
tion was amended effective August 2021. Under the amend-
ment, a hearing is to be provided to an area agency when the
IDA proposes to: "(A) [d]isapprove the area plan or any
amendment to the area plan that has been submitted to the
[IDA] by the [area agency]; or (B) [r]eject the [area agency's]
recommendation to designate a service provider." 89 Ill. Ad-
min. Code § 230.450(a)(1) ("2021 Hearing Rule"). The IDA
also has the right to "conduct administrative hearings for
other appeal requests concerning the health, safety and wel-
fare of older individuals." 89 Ill. Admin. Code § 230.450(b).

## B.  The Underlying Disputes

In June 2019, NIAAA requested an administrative hearing
("Initial Petition") with the IDA. The petition presented two
grievances and requested findings that the IDA violated the
Illinois Administrative Procedure Act, 5 ILCS 100/1–1 *et seq.*,
by withholding funds from it, and that the Department also
violated Illinois law.

The first grievance NIAAA aired in its Initial Petition
stemmed from the fallout that occurred when NIAAA de-
cided that the IDA's Adult Protective Services (APS) Manual
was invalid and ought to be recalled. In July 2013, NIAAA
reached out to the IDA's then-director, John Holton, raising
concerns about the manual. Months later, Holton sent

NIAAA a letter advising that the IDA was terminating NIAAA's FY2014 Adult Protective Services (APS) Grant, effective January 2014. Fast forward to 2019. In April of that year, the petition alleged, NIAAA's director and general counsel, Grant Nyhammer, was told by an IDA employee that the employee had been "given an order [to] withhold funding from [NIAAA] to retaliate for [its] advocacy." Later that month, as outlined in the petition, Nyhammer asked Basta via email to "investigate funding being withheld" from NIAAA. Basta responded that she could not speak to practices preceding her tenure as director.

From this emerged the second grievance NIAAA presented in the Initial Petition—that the IDA had refused NIAAA's administrative hearing request. The IDA denied the Initial Petition because it did not present a "contested case" as defined in the Illinois Administrative Procedure Act and therefore did not require a hearing.

Two months after submitting the Initial Petition, NIAAA submitted a second petition ("APS Petition") in August 2019. The APS Petition raised grievances about events after the filing of the Initial Petition. This second petition requested a hearing and alleged that the IDA had improperly rejected NIAAA's designation of APS providers. As background, two months earlier, in June, NIAAA had designated APS providers for its service agency. The next month, the IDA responded that the IDA was "exercising its right to reject the [provider] recommendations" because of "various deficiencies in the underlying [r]equest." NIAAA's APS Petition followed, which the IDA denied by letter in September 2019. The letter informed NIAAA that the IDA "is unable to provide a hearing

because the [APS Petition] fails to present a contested case that would support the right to an adjudicatory hearing."

Two years after its first two petitions were denied, NIAAA submitted a third petition ("State Plan Appeal"). This petition, sent in September 2021, alleged that the IDA's state plan for 2022–2024 did not comply with the OAA's regulations. Like the first two petitions, the third petition requested an administrative hearing. In December 2021, the IDA responded with a letter dismissing the petition because 89 Ill. Adm. Code 230.420(d) only permitted area agency appeals in two limited and inapplicable circumstances.

## C. Court Proceedings

On November 5, 2019, NIAAA filed a complaint for mandamus in Winnebago County Circuit Court. The state trial court denied relief, but the state appellate court reversed with instructions for the IDA to conduct hearings on both the Initial Petition and APS Petition. In its order remanding the matter, the appellate court concluded that the IDA's "summary dismissals of [NIAAA's] petitions and its conclusory statements that the petitions failed to present contested cases were insufficient for meaningful judicial review." *Nyhammer v. Basta*, 188 N.E.3d 1283, 1290 (Ill. App. Ct. 2022)**.** The appellate court also held that the IDA was "required to give [NIAAA] adjudicatory hearings and determine the merits of its petitions." *Id*. at 1292. The case then made its way to the Illinois Supreme Court which disagreed with the state appellate court and, instead, affirmed the trial court's judgment dismissing the mandamus complaint. *Nyhammer v. Basta*, 215 N.E.3d 935 (Ill. 2022), *cert. denied*, 143 S. Ct. 2497 (2023).

Having lost its administrative and state court challenges, NIAAA proceeded to federal court. On February 28, 2022, NIAAA filed a complaint against Paula Basta in the Northern District of Illinois. NIAAA pleaded ten causes of action against Basta in its First Amended Complaint: five in her personal capacity (Counts I–V) and five in her official capacity (Counts VI–X). The allegations at issue in this appeal are as follows:

> Count I: the dismissal of the State Plan Appeal violated NIAAA's hearing rights under the OAA;

> Count II: the dismissal of the State Plan Appeal violated NIAAA's right to function as a public advocate as defined by the OAA;

> Count III: the refusal to provide a hearing on the Initial Petition violated the Fourteenth Amendment's due process guarantees;

> Count IV: the refusal to provide a hearing on the APS Petition violated the Fourteenth Amendment's due process guarantees;

> Count V: the IDA's regulation on hearings (as amended and codified under 89 Ill. Admin. Code § 230.410, which the parties refer to as the "Hearing Rule") denies NIAAA its right to a hearing under the OAA and thereby deprives NIAAA of due process.

Counts I–V were brought under 42 U.S.C. § 1983. Counts VI–X involved pendant state law claims. NIAAA sought damages in excess of $75,000, attorneys' fees, and declaratory judgments that (1) Basta unlawfully failed to provide

hearings on NIAAA's three petitions, (2) Basta violated due process, OAA, and state law rights, and (3) the Hearing Rule is invalid under the Illinois Administrative Procedure Act.

In response, Basta filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). That motion alleged that NIAAA had not shown: (A) "any property right in an administrative hearing pursuant to due process [or] the Older Americans Act"; (B) a clearly established right that had been violated to defeat qualified immunity to bar Counts I–V; (C) why sovereign immunity would not bar Counts VI–X; (D) why the statute of limitations would not bar Counts III and IV; (E) what standing NIAAA has to bring Counts VII–VIII on behalf of older adults and organizations. After full briefing on that motion, the district court entered an order dismissing NIAAA's complaint without prejudice. The order invited NIAAA to file an amended complaint, but NIAAA instead filed a motion for entry of a final judgment. The district court granted that motion, and this appeal followed.

## II

With those facts established, we turn to NIAAA's challenge to the district court order granting the motion to dismiss. We review de novo a dismissal for failure to state a claim. *Gociman*, 41 F.4th at 881. And we may affirm a dismissal on any basis supported by the record. *Thomas v. Dart*, 39 F.4th 835, 840 (7th Cir. 2022).

Recall, the district court dismissed all of NIAAA's federal claims (Counts I–V) for three reasons: (1) the statute of limitations barred claims arising from the IDA's denials of NIAAA's Initial Petition and APS Petition; (2) NIAAA lacked

any property interest deprived by the IDA without due process; and (3) the OAA provisions at issue did not clearly manifest an unambiguous intent to confer individual rights enforceable by NIAAA via § 1983. On appeal, NIAAA challenges all three reasons. We review each in turn.

### A. Statute of Limitations

As a threshold matter, NIAAA argues that the district court improperly considered the statute of limitations when ruling on Basta's motion to dismiss. Specifically, NIAAA claims that the statute of limitations is an affirmative defense and therefore must be raised in an answer, not a motion to dismiss. That is incorrect. In *Talevski ex rel. Talevski*, our court did indeed caution that "the *proper* way to raise a limitations defense is in the answer, as an affirmative defense." *Talevski ex rel. Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713, 721 (7th Cir. 2021), *aff'd sub nom. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023) (emphasis added) (citing Fed. R. Civ. P. 8(c)). But in that very case, we also acknowledged two other ways that the defense can be raised: (1) in a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c); or (2) in a Rule 12(b)(6) motion to dismiss in the rare circumstance where "the complaint alone alleges enough facts to eliminate all doubt about timeliness." *Id*. Here, there was no factual dispute as to timeliness, only a legal one. The parties do not dispute when the underlying facts occurred, and the timing of those events was adequately alleged in the complaint. Instead, they dispute whether the timing of those events meant that related claims were barred as a matter of law. Thus, the district court

was right to consider Basta's statute of limitations argument when ruling on the motion to dismiss.

With this threshold matter settled, we consider whether the statute of limitations legally barred the claims at issue here. We have previously held that "section 1983 claims arising in Illinois are governed by a two-year statute of limitations." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). In *Kelly*, we made three important observations: (1) courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a § 1983 case; (2) federal law governs the accrual of claims for these purposes; and (3) courts apply the tolling laws of the state where the injury occurred. *Id.* These rules and principles guide us in answering two questions. We first ask when the claims accrued. We then ask whether the limitations period was tolled.

As we observed in *Kelly*, the general standard for the accrual question is that § 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id*. (quoting *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)). In this case, the two relevant petition denials were discrete events that both occurred by September 2019. It is difficult to imagine how NIAAA would not or should not have known of the injuries it suffered as a result of those denials in September 2019. And NIAAA does not present any support for an alternative conclusion. In its appellate briefing, NIAAA does not directly challenge Basta's argument about when NIAAA's claims accrued. Thus, NIAAA has waived any argument that the claims accrued after September 2019. *See Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999)

("Arguments not developed in any meaningful way are waived.").

NIAAA does argue, however, that its state court litigation tolled the limitations period. Illinois law does not support this argument. NIAAA points us to the Illinois continuing tort doctrine, under which the limitations period is "tolled" for continuing violations. Despite courts occasionally using the word "toll" when applying the doctrine, the Illinois continuing tort doctrine governs only the point at which a claim accrues. *See Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001) ("The continuing violation doctrine is … best characterized as a doctrine governing the accrual of a claim."); *see also Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) ("[T]he correct characterization of the [Illinois] doctrine of continuing violation is that it is a doctrine governing accrual, … not a tolling doctrine[.]" (citations omitted)); *Powell v. City of Danville*, 625 N.E.2d 830, 831 (Ill. 1993) ("There are situations where the tortious conduct is continuing, and the limitations period begins on the date of the last injury (the date the tortious acts cease)."). Thus, NIAAA has not offered, nor have we found, any authority to support NIAAA's position that its state court litigation tolled the statute of limitations for its federal claims.

For these reasons, we find that the relevant claims accrued by September 2019—more than two years before NIAAA filed its complaint in federal court in February 2022—and were not tolled for any period. Accordingly, we affirm the district court's ruling that NIAAA's claims "arising from the denials of the Initial Petition and the APS Petition are barred by the statute of limitations." *Nw. Ill. Area Agency on Aging v. Basta*, 3:22-cv-50070, 2023 WL 6057263, at *3 (N.D. Ill. Aug. 16, 2023).

### B.  Deprivation of Property Rights Without Due Process

Although the statute of limitations problem is sufficient to affirm the dismissal of NIAAA's claims about the denial of the Initial and APS Petitions, it does not support dismissal of the State Plan Appeal claims. Therefore, we next consider whether those claims implicate NIAAA's due process rights.

NIAAA argues that Illinois state law establishes property rights enforceable under § 1983. But this is hard to square with the fact that Illinois' highest court determined that Illinois state law does not create such rights, at least regarding the IDA's denial of hearings on the Initial Petition and APS Petition. In *Nyhammer*, the Illinois Supreme Court considered the IDA's denial of hearings on the Initial Petition and APS Petition and held:

> Here, NIAAA makes no argument that it has a life or liberty interest in the subjects of its petitions for hearing. Thus, the only potentially applicable interest NIAAA could have in the funding or service provider designation for which it seeks a hearing from the Department is a property interest. However, to have a property interest, there must be more than a unilateral expectation of the funding or approval of its service provider designations. Rather, NIAAA must show a legitimate claim of entitlement to the funding or service provider designation for which it seeks a hearing.
>
> Applying these principles to the case at bar, we cannot say that NIAAA has a constitutionally protected property interest because NIAAA has

> not alleged facts explaining how, under objectively ascertainable criteria set forth in the law that limits the Department's discretion in some way, it is entitled to the "other funding" or service provider designation approval that it seeks.

215 N.E.3d at 950 (citations omitted).

We see no reason why the denial of the hearing requested in NIAAA's State Plan Appeal—which was not before the Illinois Supreme Court—would have involved property rights created by state law where the first two denials did not. In its briefing, the NIAAA notes that the third petition cited two agency regulations, but those would have also applied to the first two petitions, as would the Illinois Administrative Procedure Act. Thus, in accordance with the Illinois Supreme Court's decision in *Nyhammer*, we affirm the district court's holding that NIAAA has failed to plausibly allege a due process violation. *See Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 934 (7th Cir. 2018) ("We must defer to a state court's interpretation of the state's statute.") (cleaned).

### C. The OAA & Section 1983

On the question of whether the OAA creates rights enforceable under § 1983, NIAAA asks us to reach the same result that the Supreme Court did in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023). As we recently observed, the Supreme Court in *Talevski* provided a twofold test to analyze whether a Spending Clause statute creates a right enforceable under § 1983. *Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 970–71 (7th Cir. 2025) (citing *Talevski*, 599 U.S. at 180–183); *see also Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229–34 (2025) (clarifying the analysis). The

first part of that analysis asks whether Congress "unambiguously conferred individual rights upon a class of beneficiaries to which the plaintiff belongs." *Talevski*, 599 U.S. at 183 (cleaned). If we answer that question in the affirmative, then the second part of the *Talevski* analysis asks whether Congress intended to preclude the enforcement of those individual rights via § 1983. *Id.* at 186.

Applying that two-part approach in *Talevski*, the Court concluded that the Federal Nursing Home Reform Act's (FNHRA) unnecessary-restraint and predischarge-notice provisions "unambiguously" conferred such rights to nursing home residents. *Id.* at 184 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)). The nursing home residents cleared the first hurdle because the provisions at issue spoke specifically in terms of individual rights. *Id.* at 184–86. And the defendants could not rebut the resulting presumption—that is, that the individual rights Congress created in the FNHRA could be enforced via § 1983—because enforcement under § 1983 was compatible with the enforcement scheme provided for in the FNHRA. *Id.* at 187–91.

Here, the district court determined that the OAA differs from the FNHRA in both relevant respects. At the first step of the *Talevski* analysis, we "employ traditional tools of statutory construction." *Talevski*, 599 U.S. at 183. Here, those tools leave us without the necessary conviction that the OAA provisions at issue in this case create individual rights enforceable by NIAAA. So, we need not reach the second part of the analysis.

Starting with § 3027 of the OAA, we conclude that this provision does not create an individual right enforceable under § 1983 for three reasons.

First, the context of § 3027 militates against this determination. Although the OAA speaks to older Americans' "entitlements" generally, § 3027 was not enacted to secure those entitlements *per se*, but to regulate federal funding related to those entitlements. An indicator of that purpose, for example, is the remedy the section provides for noncompliance. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981) ("[T]he typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State."). Here, that remedy is the termination of funds to non-compliant states. *See* 42 U.S.C. § 3027(d) ("Discontinuance of Payments").

Second, § 3027 does not identify area agencies specifically or older persons more generally as the benefited class. Whereas the FNHRA's relevant provisions spoke directly to nursing home residents' needs and welfare, § 3027 speaks only in terms of the states. It deals with giving funds to *states*, withholding those funds from *states*, allowing *states* to appeal findings made by the federal government, the notice afforded to *states*, and the limitations of *states'* power.

Third, no provision of § 3027 specifically confers rights to residents. Although it requires detailed state plans targeted at specific services, § 3027 governs neither how those services are to be administered nor what individual rights (if any) the services are intended to secure. This differs from the FNHRA provisions at issue in *Talevski* which required nursing homes to protect "transfer and discharge *rights*" and "protect and promote *the right* to be free from any physical or chemical restraints imposed for purposes of discipline or convenience and not required to treat *the resident's* medical symptoms."

*Talevski*, 599 U.S. at 184–85 (emphasis in original) (cleaned) (citing 42 U.S.C. §§ 1396r(c)(1)(A)(ii) and 1369r(c)(2)); *see also Medina*, 145 S. Ct. at 2234 ("[T]he statutes at issue in *Talevski* supply the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right."). Indeed, there is no mention of individual "rights," "privileges," "immunities," or any similar language, in § 3027.

As the Supreme Court recently emphasized, § 1983 permits plaintiffs "to sue for violations of federal spending-power statutes only in 'atypical' situations …." *Medina*, 145 S. Ct. at 2239 (quoting *Talevski*, 599 U.S. at 183). For the three reasons discussed above, we are left unconvinced that § 3027 is the sort of "atypical" provision contemplated in *Talevski*.

Turning to § 3026(f)(2) of the OAA, we see no reason to engage in the *Talevski* analysis. This is because, even if the provision could be enforced via § 1983, NIAAA failed to state a claim against Basta. Recall, NIAAA claimed that § 3026(f)(2) required the IDA to hold a hearing on the withheld funding at issue in the Initial Petition. Yet the defendant, Basta, played no role in that affair. As the district court noted, "there are no allegations from which it can plausibly be inferred that [Basta] ever made any decision to withhold OAA funding." *Basta*, 2023 WL 6057263 at *5. In the Initial Petition, NIAAA alleged only that Basta's predecessor withheld funds without first granting a hearing. So, even if § 3026(f)(2) does create rights enforceable under § 1983—a question that we do not consider today—NIAAA fails to state a claim upon which relief can be granted.

Having followed the approach set forth in *Talevski*, we affirm the district court's ruling that none of the relevant OAA provisions create a right enforceable under § 1983.

### III

In conclusion, we find that the district court correctly decided the due process, § 1983, and statute of limitations issues NIAAA raises, and properly granted the motion to dismiss. Because we affirm on those grounds, we do not reach the question of qualified immunity. *See Hicks v. Ill. Dep't of Corr.*, 109 F.4th 895, 900 (7th Cir. 2024).

The judgment of the district court is **AFFIRMED**.