Argued and submitted September 21, affirmed December 14, 2022

S. E. G.,
*Petitioner-Appellant,*

*v.*

Kenneth D. PARKER,
*Respondent-Respondent.*

Lane County Circuit Court
20SK01615; A177204

523 P3d 154

Petitioner appeals from a general judgment dismissing her temporary stalking protective order (SPO), assigning error to the trial court's dismissal of the temporary SPO for want of prosecution when petitioner was unable to find and serve respondent for 14 months. Petitioner contends that dismissal did not comply with ORCP 54 B(3). *Held*: A trial court has inherent authority to dismiss an action for want of prosecution on its own motion, separate from the procedure provided by ORCP 54 B(3). Under the circumstances, the trial court could have reasonably concluded that petitioner had exhausted all existing avenues for serving respondent and that, short of respondent's arrest, the case would continue indefinitely if not dismissed. The trial court did not abuse its discretion in declining to continue the matter as a pending case in light of those issues.

Affirmed.

Amit K. Kapoor, Judge.

Sara L. Mader argued the cause for appellant. Also on the brief were Heather Marek and Oregon Law Center.

No appearance for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

## SHORR, P. J.

Petitioner appeals from a general judgment dismissing her temporary stalking protective order (SPO), assigning error to the trial court's dismissal of the temporary SPO for want of prosecution. We conclude that the trial court did not abuse its discretion in dismissing the temporary SPO and therefore affirm.

The court did not make any express factual findings when it dismissed the temporary SPO and most of the facts relevant to our review are procedural in nature. Nevertheless, where necessary, we view the evidence, as well as all reasonable inferences that may be drawn from it, in the light most favorable to the trial court's ruling. *J. C. R. v. McNulty*, 304 Or App 286, 287, 467 P3d 48 (2020).[1]

On July 9, 2020, petitioner petitioned the trial court for an SPO pursuant to ORS 30.866(1)[2] based on two contacts with respondent that occurred in April and June of the same year. In her petition, petitioner alleged that she met respondent on the street, struck up a conversation with him, and travelled with him to another location where respondent restrained, threatened, and sexually assaulted her for nearly 12 hours. In the second contact two months later, petitioner alleged that respondent appeared at her residence and again sexually assaulted her. Petitioner sought

---

[1] Petitioner does not request *de novo* review, and we decline to exercise our discretion to conduct such review. *See* ORS 19.415(3)(b) ("Upon an appeal in an equitable action ***, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases.").

[2] ORS 30.866(1) provides:

"A petitioner may bring a civil action in a circuit court for a court's stalking protective order or for damages, or both, against a respondent if:

"(a) The respondent intentionally, knowingly or recklessly engages in repeated and unwanted contact with the petitioner or a member of the petitioner's immediate family or household thereby alarming or coercing the petitioner;

"(b) It is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the petitioner reasonable apprehension regarding the personal safety of the petitioner or a member of the petitioner's immediate family or household."

the issuance of an SPO against respondent to protect herself from future contact by respondent, but did not seek to recover monetary damages against respondent. *See* ORS 30.866(1) (stating that a person may bring a civil action for an SPO, damages, or both).

Pursuant to ORS 30.866(2),[3] the trial court issued a temporary SPO and an order requiring respondent to appear for a hearing on the merits on August 10. Soon after, however, the sheriff's office filed a return of service indicating that respondent had not been found at the Lane County address provided.

At the August hearing, petitioner stated that she was "struggling" with service and requested a setover. The court continued the merits hearing to September. When respondent had still not been found or served by the time of the September hearing, the court continued the hearing again, indicating that it wanted to give petitioner "one last shot" to serve respondent.

A few days prior to the October hearing, the sheriff's office in Malheur County filed a return of service indicating that respondent had not been found at an Ontario address provided. At the subsequent hearing, petitioner asked for the matter to be reset "as far out as you're willing to give me because we're working on service," and the court reset the hearing another six weeks into December. At the December hearing, respondent had still not been served, petitioner requested a reset for "as far out as you're willing to push it," and the court reset the hearing yet again to January 2021. The day after the December hearing, the Lane County Sheriff's Office filed another return of service, indicating that respondent had not been found and that no known address for respondent was available.

---

[3] ORS 30.866(2) provides:

"At the time the petition is filed, the court, upon a finding of probable cause based on the allegations in the petition, shall enter a temporary court's stalking protective order that may include, but is not limited to, all contact listed in ORS 163.730. The petition and the temporary order shall be served upon the respondent with an order requiring the respondent to personally appear before the court to show cause why the temporary order should not be continued for an indefinite period."

At the January 2021 hearing, the court expressed its concern that the matter had been reset so many times and stated that, "at some point[,] the incident becomes stale enough that there's a legitimate concern about how far we're going to keep kicking this can down the road." Nevertheless, the court reset the matter another six weeks to March and warned petitioner that if service had not been completed by that point, "we'll contemplate what needs to happen with regards to how long this is going to keep getting set over."

Respondent had not been found or served by the March hearing, prompting the court to opine that it was "not sure how *** many times we can keep kicking this can down the road." Petitioner asserted that she needed the temporary SPO for her safety and again requested that the matter "be set out as long as possible." She stated that her "hope" was that respondent would "be arrested," explaining that "if he were arrested, *** that's going to be an effective means of serving him." The court expressed that it was "willing to consider one more setover," but emphasized that it was "getting to a point of becoming inappropriate how many times this is just getting set over." The court reset the matter another six weeks to April.

Respondent had still not been found or served by the April hearing. The court opined that it was "not sure why this needs to just keep floating out over and over again" and "more than a little concerned about kicking this can down the road when service has not been accomplished in such a length—since July of last year and here we are mid-April." The court clarified that its concern was with "how quickly a case can be prosecuted *** from a docket-management perspective." Petitioner asserted that she still feared respondent and argued that the court lacked the authority to dismiss the temporary SPO on its own motion prior to a hearing on the merits. Petitioner listed the multiple attempts that she had made to serve respondent in multiple states and counties, and the court accepted those representations and declined petitioner's offer to submit a declaration to that effect. In the end, the court denied petitioner's request to reset the hearing by six months, noting again that it had "already been six months," but reset the case three months out to July 2021.

Respondent had still not been located or served by the time petitioner returned for the July 2021 hearing, a year after the temporary SPO was first issued. The court stated that, "[a]t this point, I am not inclined to continue kicking this can down a road any further and am inclined to dismiss [the case] for lack of prosecution." The court noted that the "Oregon Rules of Civil Procedure do require that a matter be prosecuted within a * * * reasonable time" and opined that a temporary SPO could not remain in place "indefinitely," adding that its concern was "merely [that] there are very few cases in such posture." Petitioner reiterated her argument that there was no "statutory provision allowing the court to dismiss at this time," and the court permitted petitioner to submit briefing in support of that argument and delayed its ruling.

Two days after that hearing, petitioner filed a motion to extend the time to serve by two years, supported by a declaration from petitioner's attorney.[4] Petitioner also filed a memorandum of law where she primarily argued that "the court does not have the authority to dismiss this matter for want of prosecution." In the alternative, she argued that, even if the court had authority to involuntarily dismiss the case under ORCP 54 B(3),[5] the court had not provided

---

[4] Specifically, the attorney declared that respondent was a stranger to petitioner, complicating service efforts; that petitioner had furnished several possible addresses to law enforcement; that petitioner had hired a private investigator, who succeeded in reaching respondent by phone in August 2020; that respondent had provided a Nevada address to the investigator, but that Nevada police had subsequently been told when they attempted service that respondent did not reside at that address; that throughout 2020, police in Lane and Malheur counties had attempted to serve respondent multiple times but were unsuccessful; that petitioner had attempted to skip trace respondent using the program Accurint, but had found no new addresses through that method; and that petitioner had discovered a Facebook page with respondent's name and image soon after the assaults, but could no longer find respondent on social media once the temporary SPO was issued.

[5] ORCP 54 B(3) provides, in part:

"Not less than 60 days prior to the first regular motion day in each calendar year, unless the court has sent an earlier notice on its own initiative, the clerk of the court shall mail notice to the attorneys of record in each pending case in which no action has been taken for one year immediately prior to the mailing of such notice that a judgment of dismissal will be entered in each such case by the court for want of prosecution unless, on or before such first regular motion day, a motion, either oral or written, is made to the court and good cause shown why it should be continued as a pending case. If a motion

sufficient notice and petitioner had "demonstrated good cause" for the temporary SPO to continue as part of a pending case.

The trial court denied the motion to extend the time to serve and entered a general judgment dismissing the temporary SPO. In the end, the judgment was entered on September 24, 2021, over 14 months after the temporary SPO was first issued. The court did not make express findings of fact, nor did it issue a written opinion. Petitioner filed this timely appeal.

Petitioner asserts two assignments of error. In her first, petitioner contends that "[t]he trial court erred by involuntarily dismissing the temporary SPO on its own motion for docket management purposes when petitioner was actively trying to locate and serve respondent and had attempted service numerous times within the preceding year." In her second assignment of error, petitioner contends that the trial court erred by "involuntarily dismissing the temporary SPO on its own motion without providing petitioner notice that a judgment of dismissal would be entered absent a motion and a showing of good cause as to why the case should be continued as ORCP 54 B(3) requires." We review a trial court's decision to dismiss an action for want of prosecution for abuse of discretion. *Bredberg v. Verble*, 283 Or App 65, 69, 388 P3d 443 (2016). Discretion "refers to the authority of a trial court to choose among several legally correct outcomes," and a trial court does not act within its discretion when it does not correctly apply the law. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). In other words, under the abuse of discretion standard, "we affirm a trial court's ruling if it is within the range of lawful alternatives." *Herinckx v. Sanelle*, 281 Or App 869, 877-78, 385 P3d 1190 (2016).

Petitioner contends that the trial court erred in dismissing her temporary SPO because the court did not comply with ORCP 54 B(3) in a number of ways. ORCP 54 B addresses involuntary dismissals, and ORCP 54 B(3) specifically addresses dismissal for want of prosecution:

---

is not made or good cause is not shown, the court shall enter a judgment of dismissal in each such case."

"Not less than 60 days prior to the first regular motion day in each calendar year, unless the court has sent an earlier notice on its own initiative, the clerk of the court shall mail notice to the attorneys of record in each pending case in which no action has been taken for one year immediately prior to the mailing of such notice that a judgment of dismissal will be entered in each such case by the court for want of prosecution unless, on or before such first regular motion day, a motion, either oral or written, is made to the court and good cause shown why it should be continued as a pending case. If a motion is not made or good cause is not shown, the court shall enter a judgment of dismissal in each such case. Nothing contained in this subsection shall prevent the dismissal by the court at any time for want of prosecution of any action upon motion of any party thereto."

Specifically, petitioner argues that the court exceeded its authority in dismissing the temporary SPO because (1) she had taken numerous "actions" by repeatedly attempting to serve respondent and appearing at numerous hearings over the prior 12 months; (2) the delay was of limited duration and not due to a lack of diligence on the part of petitioner; (3) the court had not warned petitioner to act with greater diligence; (4) the court did not consider less drastic sanctions; (5) the court failed to mail petitioner a written notice that it intended to dismiss the action; and (6) the court failed to afford petitioner an opportunity to show cause for the matter to continue as pending. Petitioner also asserts that, if a petitioner is not able to serve an SPO respondent, the court lacks authority to dismiss the case for delay alone and the temporary SPO should remain indefinitely. Respondent has not appeared on appeal, and notices sent to three possible addresses for respondent were all returned to the court as undeliverable.

The problem with petitioner's arguments, described above, is that they all assume that the court dismissed the temporary SPO pursuant to ORCP 54 B(3). But the court never explained the legal basis for the dismissal, aside from its comment at the last hearing that the "Oregon Rules of Civil Procedure *** require that a matter be prosecuted within *** some reasonable time." Rather, it simply dismissed the case after hearing petitioner's arguments.

Had the court dismissed petitioner's action under ORCP 54 B(3), we agree that the court would have failed to conform to the procedure required by that rule. ORCP 54 B(3) requires a specific "notice and show cause procedure" that affords a plaintiff 60 days' notice, followed by "an opportunity to show that good cause exists to continue the proceeding as a pending case" and "a determination by the court on the merits of that issue." *Moore v. Ball, Janik & Novack*, 120 Or App 466, 470, 852 P2d 937, *rev den*, 317 Or 485 (1993). That procedure was not followed here.

However, in addition to the court's authority to dismiss an action for want of prosecution under ORCP 54 B(3), it is well established that "the power of a court to dismiss an action for want of prosecution is an inherent power, and it exists independently of statute or rule of court." *Reed v. First Nat. Bank of Gardiner*, 194 Or 45, 55, 241 P2d 109 (1952). *See also Main Street Asset Corp. v. Cunningham*, 98 Or App 346, 349, 778 P2d 1003 (1989) (stating that trial courts have "inherent authority to dismiss an action for failure of the plaintiff to prosecute diligently"); *Howser v. Ben Dierks Lbr. Co.*, 270 Or 657, 661, 528 P2d 1341 (1974) ("In addition to the power vested in it by statute a trial court has inherent power to dismiss an action for want of prosecution.").

That authority remains good law. ORCP 54 B(3) had its origins in a 1949 statute that outlined the now-familiar procedure for dismissal for want of prosecution on a court's own motion, requiring 60 days' notice and opportunity for the plaintiff to show good cause for the case to continue as pending. Or Laws 1949, ch 223, § 1. The 1949 law was soon thereafter codified in the newly created Oregon Revised Statutes as ORS 18.260. *Former* ORS 18.260 (1955), *repealed by* Or Laws 1979, ch 284, § 199. When the legislature enacted the first iteration of the Oregon Rules of Civil Procedure in 1979, the language in ORS 18.260 was carried nearly verbatim into ORCP 54 B(3). *Compare former* ORS 18.260 (1977) *and* ORCP 54 B(3) (1980); *see also* Official Commentary to ORCP 54 B(3) in Oregon Law Institute, 1980, Oregon Civil Procedure Rules, 160 (1979) (noting that ORCP 54 B(3) "is based on ORS 18.260"). Despite amendments over the years, ORCP 54 B(3) today is largely the

same as the original 1949 law, with the only substantive change over that period being the legislature's 1971 amendment to *former* ORS 18.260 (1969), which added language permitting the court to send "an earlier notice on its own motion." *See* Or Laws 1971, ch 224, § 1.

In total, then, some statute or rule has outlined a specific procedure for a court to dismiss a case for want of prosecution on its own motion for more than 70 years. However, during the same period, the Supreme Court has repeatedly reaffirmed a trial court's inherent authority to dismiss for want of prosecution on its own motion, unbounded by that procedure. *See, e.g.*, *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 85, 90, 376 P3d 960 (2016) (recounting *Reed* and stating that courts have the authority to "dismiss an action for prudential reasons as an exercise of their inherent power to administer justice"); *Howser*, 270 Or at 661-65 (affirming trial court's dismissal for lack of prosecution on its own motion based on court's "inherent power to dismiss"); *Reed*, 194 Or at 56-57 (explaining that 1949 law that preceded ORCP 54 B(3) "contains no restrictions or limitations" on court's inherent authority to dismiss for want of prosecution). Thus, despite the existence of the specific procedure in ORCP 54 B(3), a trial court does not abuse its discretion solely by dismissing a case for want of prosecution absent that procedure.

The court's inherent authority is still limited by evidence and reason, however. Most importantly, "[m]erely because a case has suffered delays does not mean that there has been a failure to prosecute, particularly when it is not plaintiff's inaction that produced the delays." *Lambert v. American Dream Homes Corp.*, 148 Or App 371, 376, 939 P2d 661 (1997). For example, in *Bredberg* we concluded that the trial court had abused its discretion in dismissing an action for lack of prosecution when the plaintiff "actively litigated throughout the five-year period that [the case] was pending" and the case "had been prosecuted to the point where it was ready for trial." 283 Or App at 69-70. "[I]n determining whether delay warrants dismissing a case for failure to prosecute, the courts have considered, among other things, the length of the delay, the reasons for it, whether the court

has previously warned the plaintiff that he or she should act with greater diligence, and whether less drastic sanctions than dismissal would suffice." *Mayer v. Salway*, 163 Or App 544, 548, 988 P2d 430 (1999).

Still, a trial court is not required to carry a pending case on its docket "interminably." *Hilsenbeck v. Quadrant Corp.*, 53 Or App 341, 348, 632 P2d 19 (1981). In *Hilsenbeck*, we affirmed the trial court's dismissal of the plaintiff's contract action for want of prosecution. *Id.* at 343. The court had abated the case pending arbitration, but the plaintiff had failed to initiate arbitration proceedings for several months, continuing his position that the contract did not require arbitration of the dispute. *Id.* at 343, 348. We concluded that the trial court had not abused its discretion in dismissing the action, noting that the "[p]laintiff's inaction for four months and its contention that the dispute was not arbitrable indicates it did not intend to proceed to arbitration." *Id.* at 348.

Although not directly on point, *Hilsenbeck* informs our conclusion that the trial court did not abuse its discretion in dismissing petitioner's temporary SPO on its own motion for want of prosecution. As noted above, a trial court has inherent authority to dismiss an action for want of prosecution on its own motion, separate from the procedure provided by ORCP 54 B(3). Although the trial court may abuse its discretion in dismissing an action for want of prosecution when the delay is not the product of the plaintiff's inaction, *Lambert*, 148 Or App at 376, the court is also not required to maintain a case on its docket indefinitely. *Hilsenbeck*, 53 Or App at 348.

Here, contrary to plaintiff's assertions, the trial court did not appear to dismiss the temporary SPO for delays in service alone. Although petitioner expended considerable effort in attempting to serve respondent at several different addresses throughout Oregon and Nevada, by March 2021, petitioner acknowledged that her "hope" was that respondent would "be arrested," because, "if he were arrested, * * * that's going to be an effective means of serving him." And although petitioner's attorney submitted a declaration detailing petitioner's service efforts in support

of the motion to extend the time for service, that declaration did not describe any specific efforts to serve respondent after December 2020. Under the circumstances, the trial court could have reasonably concluded that petitioner had exhausted all existing avenues for serving respondent and that, short of respondent's arrest, the case would continue indefinitely if not dismissed. Therefore, the court did not abuse its discretion in declining to continue the matter as a pending case in light of those issues.

Nor did the trial court fail to provide notice to petitioner that the court was considering dismissing the temporary SPO for want of prosecution. As early as January 2021, the court shared its concern on the record that "at some point the incident becomes stale enough that there's a legitimate concern about how far we're going to keep kicking this can down the road." The court again raised the same concerns at the March, April, and July 2021 hearings. And although the court did not explicitly propose *dismissing* the matter until July, petitioner clearly understood as early as April that the court was considering that action, because it was at the April hearing that petitioner's attorney first argued that there was no statutory authority that allowed for "dismissal without petitioner's request prior to [the SPO merits] hearing." In total, petitioner was aware for at least five months that the court was inclined to dismiss the temporary SPO if petitioner did not soon locate and serve respondent. That repeated in-person notice was certainly at least as effective—if not more effective—than the mailed notice required by ORCP 54 B(3).

We acknowledge that petitioner's allegations against respondent involve violent crimes that would certainly qualify as "repeated and unwanted contact" under the SPO statute. Indeed, the trial court "considered the allegations made in the petition and other evidence offered" and found that there was probable cause that respondent "engaged intentionally, knowingly, or recklessly in repeated and unwanted contact with petitioner" when it issued the temporary SPO. Further, the trial court did not fault petitioner's diligence in pursuing service. Neither do we. In short, we understand that the dismissal of the temporary SPO was an unfortunate outcome for petitioner. Nevertheless, the trial court

acted within its inherent authority and discretion when it dismissed the temporary SPO—and, thus, the action—when, after 14 months, petitioner had not been able to locate and serve respondent and it appeared likely that the case—and the temporary SPO—would continue indefinitely. The trial court did not err when it dismissed the temporary SPO and, therefore, the petition.

Affirmed.