IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

| | | |
|---|---|---|
| DAVID JOHN MEDNANSKY, | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5465** |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | **ORDER GRANTING DEFENDANT-** |
| CURRY COUNTY ASSESSOR, | ) | **INTERVENOR'S AND DEFENDANT'S** |
| | ) | **MOTIONS TO DISMISS FOR FAILURE** |
| Defendant-Intervenor. | ) | **TO PROSECUTE** |

This matter is before the court on Motions To Dismiss for Failure To Prosecute filed on February 2, 2026, by Defendant-Intervenor (the County) and Defendant (collectively, Defendants). Plaintiff filed no response. Trial was set to begin Wednesday, February 4, 2026; the court has canceled trial pending its written decision on the motions. The motions differ only slightly and are based on identical grounds: Tax Court Rule (TCR) 54 B(1) and (3).[1] The court refers to the two motions together.

## I. STANDARDS FOR DISMISSAL FOR WANT OF PROSECUTION

TCR 54 B(1) and (3) provide:

**"B Involuntary Dismissal.**

*"B(1) Failure to Comply With Rule or Order.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for a judgment of dismissal of an action or of any claim against such defendant, or the court may, on its own motion, dismiss the case.

---

[1] References to the TCR are to the 2026 edition. References to the Oregon Revised Statutes (ORS) are to the 2025 edition.

"* * * * *

> "*B(3) Dismissal for Want of Prosecution; Notice.* At the direction of the judge, the clerk of the court will mail notice to the attorneys of record or, if a party does not have an attorney of record, the copy will be mailed to the party in each pending case in which no action has been taken for six months immediately prior to the mailing of such notice that a judgment of dismissal will be entered in each such case by the court for want of prosecution, unless, on or before a specified date, application, either oral or written, is made to the court and good cause shown why it should be continued as a pending case. If such application is not made or good cause shown, the court will enter a judgment of dismissal in each such case. *Nothing contained in this subsection will prevent the dismissal by the court at any time, for want of prosecution of any action upon motion of any party thereto.*"

Tax Court Rule (TCR) 54 B(1), (3) (emphasis added). This court's rules are materially the same as Oregon Rules of Civil Procedure (ORCP) 54 B(1) and (3).[2] *See* ORS 305.425(3) (Tax Court rules "shall conform, as far as practical to the rules of equity practice and procedure in this state."). Therefore, this court may look to cases interpreting ORCP 54 B(1) and (3) as authority for interpreting TCR 54 B(1) and (3). *See* TCR Preface.

Although the typical case involves long periods of delay, courts have taken other factors into account when dismissing a case for failure to prosecute. In *S.E.G. v. Parker*, the court considered not only past periods of delay, but also the prospective possibility that service would never be accomplished and the case would "continue indefinitely":

> "Here, contrary to plaintiff's assertions, the trial court did not appear to dismiss the temporary SPO for delays in service alone. Although petitioner expended considerable effort in attempting to serve respondent at several different addresses throughout Oregon and Nevada, by March 2021, petitioner acknowledged that her 'hope' was that respondent would 'be arrested,' because, 'if he were arrested, *** that's going to be an effective means of serving him.' And although petitioner's attorney submitted a declaration detailing petitioner's service efforts in support of the motion to extend the time for service, that declaration did not describe any specific efforts to serve respondent after December 2020. Under the circumstances, the trial court could have reasonably concluded that petitioner had exhausted all existing avenues for serving respondent and that, short of respondent's arrest, the case would continue indefinitely if not dismissed.

---

[2] TCR 54 B(1) expressly allows the Tax Court to dismiss "on its own motion." ORCP 54 B(1) does not include that provision. However, in light of Defendants' motions this difference is not material for purposes of this case.

Therefore, the court did not abuse its discretion in declining to continue the matter as a pending case in light of those issues."

*S.E.G. v. Parker*, 323 Or App 202, 211–12, 523 P 3d 154, 160 (2022); *cf. Lambert v. American Dream Homes Corp.,* 148 Or App 371, 376, 939 P2d 661 (1997) (concluding that there was no evidence or reason to support dismissal for want of prosecution where delays were the fault of defendant, the trial date had not yet arrived, and plaintiff said that he was ready to proceed).

This case does not involve delay, but rather a series of prospective announcements by Plaintiff that Plaintiff does not intend to (1) present testimony (of himself or any other witness), (2) cross-examine witnesses of the County, (3) present any documentary evidence, or (4) attend trial.  (*See* Ptf's Mot Reconsider Denial of Remote Appearance at 1 ("Plaintiff states he did not intend to present evidence into this case based on his testimony, and states there is no need to bring witnesses to present his case, and sees no reason to question any witness the Defendant may bring."); (Ptf's Ltr to Court (Jan 29, 2026) at 1 ("This letter is to inform you that I am unable to attend the February 4, 2026 trial in person because I cannot afford the costs associated for travel and lodging.).) Instead, he intends to "rest" on his Third Amended Complaint.  (*See id*. ("As you pointed out, I intended for my case to be based solely on the Third Amended Complaint, with its exhibits as evidence, and I did not require questioning of Defendants and would not offer testimony to be entered as evidence.  Since I cannot be in attendance I rest my case on the Complaint.").)[3]  Because Plaintiff's position is that he does not need to appear for trial, there is no admitted evidence in the record to support Plaintiff's case; therefore, the court

---

[3] Plaintiff has not requested a trial continuance.

also considers Defendants' motions to be analogous to a motion for dismissal at the close of evidence under TCR 60.[4]

Having found no cases directly on point, the court considers factors relevant to dismissal for want of prosecution under the court's inherent authority, dismissal for failure to comply with a court rule or order under ORCP 54 B(1) and (3), and dismissal at the close of evidence under ORCP 60. From those sources, the court distills the following principles for this court:

1. The court has inherent, discretionary power to dismiss a case for want of prosecution. *See S.E.G. v. Parker*, 323 Or App 202, 209, 523 P3d 154 (2022). TCR 54 B(1) and TCR 60 provide rule authority for the court to dismiss a case for lack of sufficient evidence.[5]

2. The court must make findings and explain why dismissal is "just." *See Lang v. Rogue Valley Medical Center*, 361 Or 487, 501, 395 P3d 563 (2017) (findings and explanation, or at minimum the record, necessary to uphold trial court's dismissal for violation of order); *cf. Warren v. Cieri Management Inc.*, 344 Or App 1, 10, 579 P3d 755 (2025) (dismissal for violation of order "must be demonstrably 'just.' That standard requires (1) the record to support any violation findings on which the trial court based its dismissal decision; (2) the trial court to explain why less severe

---

[4] Like TCR 54 B(1) and (3), TCR 60 is materially the same as ORCP counterpart, ORCP 60. Differences relate to the fact that trial in the Tax Court is without a jury; therefore, for example, TCR 60 refers to "dismissal," as opposed to a "directed verdict." TCR 60 provides in full:

"Any party may move for a dismissal at the close of the evidence offered by an opponent or at the close of all the evidence. A party who moves for dismissal at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for dismissal which is not granted is not a waiver of trial even though all parties to the action have moved for dismissal. A motion for dismissal must state the specific grounds therefor. The judgment of the court granting a motion for dismissal will be with prejudice. If a motion for dismissal is made by the party against whom the claim is asserted, the court may, at its discretion, give a judgment of dismissal without prejudice under TCR 54 rather than with prejudice."

[5] In *Castro and Castro*, 51 Or App 707, 709-10, 626 P2d 950 (1981) the Court of Appeals addressed the history of ORCP 54 and ORCP 60:

"ORCP 54 B(2) * * * is virtually identical to that of Federal Rules of Civil Procedure (FRCP) 41(b) * * *."

"* * * * *

"The legislative history indicates that ORCP 54 and ORCP 60 together eliminated the motion for nonsuit under former ORS 18.210 to 18.260 (repealed Or Laws 1979, ch 284, § 199). ORCP 54 B(2) is the rule allowing a motion to dismiss to test the sufficiency of evidence at the close of plaintiff's case in nonjury cases; ORCP 60 allows a motion for directed verdict to test the sufficiency of the evidence at the close of plaintiff's case in jury cases. Testimony of Fred Merrill; *see also* analysis of ORCP 54 and ORCP 60 in Oregon Law Institute, 1980 Oregon Rules of Civil Procedure 273 (1979)."

sanctions are not applicable or adequate to address the violations the court has found, and (3) the trial court to find that the party engaged in violative conduct willfully and knowingly.").

3. Discretionary authority is "limited by evidence and reason." *S.E.G. v. Parker*, 323 Or App at 210. Those limitations require the court to consider the following factors:

   a. *Plaintiff's own actions; court warnings.* In the more common context of delays, a court should consider whether the cause of delay is the plaintiff's own actions or inaction, and whether the court has previously "warned the plaintiff that he or she should act with greater diligence." *Id.* at 210-11. In the context of this case, this court considers whether Plaintiff's prospective failure to present evidence is due to his own actions or inaction, and whether the court warned Plaintiff of the need to put on an evidence-based case.

   b. *Practical likelihood that trial would lead to result different from dismissal.* Additional factors arising in the context of dismissal due to delay include the overall length of delay to date, whether further delay is likely to allow the case to ultimately proceed, and whether the case has been prosecuted to the point where it is ready for trial. *See id.* at 211-12. This court views these factors as bearing on the practical likelihood that trial will be possible, or will produce a result other than dismissal. Reasoning by analogy, in this case, the court considers the severity of the prospective failure of evidence and whether trial could go forward notwithstanding the evidentiary gaps.

   c. *Availability of lesser, effective sanctions.* Finally, the court must consider whether less drastic sanctions than dismissal would suffice, and the court must explain its choice. *See id.* at 210-11.

## II. FACTUAL FINDINGS

Based on the record, the court finds as follows:

- *The property's real market value (RMV) has always been at issue.* Plaintiff, with consent or leave, amended his complaint three times. Although he changed legal theories, and the factual basis for his position, each version of his complaint included a claim to reduce the RMV of the property. *Mednansky v. Dept. of Rev.*, __ OTR __ (Nov 18, 2025) (slip op at 5) (granting partial summary judgment and leave to file third amended complaint).

- *Plaintiff has been repeatedly informed of the need to present evidence of RMV in order to satisfy his burden of proof.*

  o Starting with the first case management conference, held July 22, 2024, the court pointed out to the parties that a party seeking an RMV different from the RMV on the roll bears the burden of proof as to that value, and that the court needs evidence from the parties as to that value. *See* Statement of Judge Manicke, Case

Management Conference, July 22, 2024, at 11:06 a.m.; Court Ltr to Parties Jul 23, 2024 at 2 (citing *Linstrom v. Dept. of Rev.*, TC 5459 (Mar 11, 2024) (slip op at 2) (dismissing taxpayer's appeal during trial because taxpayer presented no evidence supporting "any particular RMV").

o Later, in a November 18, 2025, order on partial summary judgment, the court stated at length:

"a party that puts RMV at issue takes on a much larger task than merely finding fault with the value on the roll. That party must be prepared to present competent evidence that a willing buyer would pay a willing seller the amount in cash for which the party contends. *See* ORS 308.205(1); *Dunne v. Dept. of Rev.*, TC 5440, 2024 WL 78169, at *2 (Or Tax, Jan 5, 2024) ('RMV means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction as of the annual assessment date.'). Allegations of specific shortcomings of the property * * * are merely a first step to proving RMV. And while a property owner is allowed to *testify* as to value, the task of *proving* RMV nearly always demands that the party present expert testimony that considers the cost approach, the comparable sales approach, and the income approach to value. *See Freitag v. Dept. of Rev.*, 19 OTR 37, 45 n 8 (2006) (holding that a property owner is competent to testify as to property value); *Swanek v. Dept. of Rev.*, TC 5423, 2022 WL 2903990, at *3 (Or Tax July 22, 2022) (party seeking affirmative relief has the burden of proof under ORS 305.427); OAR 150-308-0240(2)(a) (requiring consideration of all three approaches to value).  The court's case law establishes that a taxpayer who simply latches onto the RMV shown on the roll and seeks a discount from that value because of a single feature of the property such as a diminished view, is highly unlikely to carry the burden of proving RMV. *See Covington v. Dept. of Rev.,* 24 OTR77, 79 (2020) (concluding that the court could not make a 'limited adjustment to RMV' based on taxpayer's allegation of a change in view).  'The court's task is to decide the RMV if a taxpayer challenges the RMV.'  *Id.*; *see also Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (*citing King v. Dept. of Rev.*, 12 OTR 491 (1993) ('As this court has pointed out, it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property.').) One reason the court's rules require a pretrial exchange of appraisal reports in valuation cases is that the facts relevant to RMV may not be fully identified until an expert refers to them in an opinion of value, and the opposing party needs to know those facts with time to prepare for trial."

*Mednansky v. Dept. of Rev.*, __ OTR __ (Nov 18, 2025) (slip op at 5-6) (footnotes omitted).)

o In a December 29, 2025, order denying Plaintiff's request to "supplement" his third amended complaint, the court reiterated:

> "By stating that Plaintiff is 'free' to advocate for a method of determining RMV, the court does not suggest that a position based on any particular method necessarily would have an objectively reasonable basis, within the meaning of ORS 20.105(1). The court reminds the parties that 'a taxpayer who simply latches onto the RMV shown on the roll and seeks a discount from that value because of a single feature of the property such as a diminished view, is highly unlikely to carry the burden of proving RMV. *See Covington v. Dept. of Rev.,* 24 OTR 77, 79 (2020).' *Mednansky v. Dept. of Rev.*, Nov 18, 2025 (slip op at 6)."

*Mednansky v. Dept. of Rev.,* TC 5465 (Or Tax, Dec 29, 2025) at 2 n 1.

o Finally, in a January 28, 2026, order denying Plaintiff's request for judgment on the pleadings, the court stated:

> "In this case, Plaintiff's 'claim' is for an adjustment to the Subject Property's RMV, to $138,844. (*See* Ptf's 3rd Am Compl at 2 ("Assessor must recalculate the RMV on the subject property"); Statement of David Mednansky, Oral Argument, Nov 10, 2025, 10:02 (stating that he seeks RMV of $138,844).) This claim is entirely factual. *See Freitag v. Dept. of Rev.*, 19 OTR 337, 338 (2007) ('This case involved a dispute about the RMV of taxpayers' property. That is a question of fact to which taxpayers bore the burden of proof and the burden of going forward.')."

*Mednansky v. Dept. of Rev.*, __ OTR __ (Jan 28, 2026) (slip op at 2).

- *Plaintiff has disavowed a claim for any specific RMV.* Contrary to the court's rules, Plaintiff has not included a requested RMV in any version of his complaint. *See* TCR 18 B ("If the real market value of property is in issue, a party seeking a change of the value shown on the assessment records must plead the dollar amount of the real market value claimed by that party for each tax year at issue."). In response to a direct question from the court on November 10, 2025, Plaintiff stated that the RMV he sought was $138,844. (*See* Statement of David Mednansky, November 10, 2025, at 10:02 a.m.) In later filings, however, Plaintiff has denied that he seeks this value and has argued that it is up to the County to determine the correct RMV. (*See* Ptf's Ltr to Court, Jan 29, 2026, at 2 ("The fact that you asked me in Point 3, 'What real market value Plaintiff asks the court to determine for the subject property', is clear evidence you acted to steer the case away from my case in chief. I did not ask a value because as stated in the complaint it was the assessor who should determine how much value was mistakenly added.").)

- *Plaintiff has informed the court that he does not intend to present evidence of RMV or address the County's evidence.* On November 23, 2025, Plaintiff filed his third amended complaint, making plain that he seeks a reduction in RMV. (*See* Ptf's 3d Am Compl at 2 ("Assessor must recalculate the RMV on the subject property").) Plaintiff attached a

number of documents that he claims support his request, none of which have been authenticated, or subjected to potential objection by Defendants, in the course of this case.[6] On January 13, 2026, in the context of a request to appear by remote means, Plaintiff informed the court and Defendants that he did not intend to testify, take testimony of others, cross-examine the county's witnesses, or proffer any exhibits for potential admission as documentary evidence. (*See* Mot for Reconsideration of Denial for Remote Appearance at 1-2 ("Plaintiff * * * tried to make it understood, as best he could, that his case was solely based on documents he received from Curry County Assessor during discovery and the ODOT email evidence he placed on record with the Complaint, and the Gary Hill letter. Plaintiff states he did not intend to present evidence into this case based on his testimony, and states there is no need to bring witnesses to present his case, and sees no reason to question any witness the Defendant may bring. Plaintiff alleges his case is based solely on documents received from the assessor and from ODOT officials who oversee the district where the subject property is located. * * * Plaintiff did not state in the course of this case that he intended to give in-person testimony at the court trial to prove his case in chief. The evidence, documents mentioned above, Plaintiff intends to file with the Court in this case are already on record except for the ones that Defendant has yet to supply in accordance with the Court's order to compel discovery.").)

Ultimately, the court finds that Plaintiff demands that the County be ordered to "recalculate" the RMV of the subject property using a method of which Plaintiff approves. (Ptf's 3d Am Compl at 2.) Plaintiff proposes to put forward no evidence of what that "recalculated" value might be, as Plaintiff has stated a refusal to attend trial, to testify, present witnesses, or even to adduce evidence from the County's witnesses through cross-examination. (Ptf's Mot for Reconsideration of Denial for Remote Appearance at 1-2; Ptf's Jan 29, 2026 Ltr to Court at 1.) He exchanged no proffer of potential exhibits in advance of trial as required by the court's rules. *See* TCR 56 B(5)(a) (requiring documents to be relied on by party's appraiser (other than property owner) to be exchanged 30 days before trial), (5)(b) (requiring all other potential case-in-chief exhibits to be exchanged five days before trial). As best the court can discern from Plaintiff's filings, he believes the County should discount the RMV on the roll by a percentage or

---

[6] These include what appear to be a copy of a one-page "Land Appraisal" dated in 1993, another dated in 1987 and 1989, a one-page "Property Appraisal" dated in 2019, a petition filed with the Curry County Board of Property Tax Appeals (BOPTA) in 1998, a 1998 letter from a Gary Hill to a Ms. Grasty, a 10-page petition filed with the BOPTA by the County for 2022, and a series of emails apparently exchanged between Plaintiff and a Glen Pederson at the Oregon Department of Transportation in 2025.

other formulaic amount that reflects the degree of ocean view his property actually has, compared to a mistaken degree of view that the County used when setting the RMV shown on the property tax roll. As discussed below, the central flaw in Plaintiff's position is that it does not reflect any attempt to establish what a willing buyer would pay for the property in cash. *See* ORS 308.205(1) ("Real market value * * * means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year.").

## III.      SUBSTANTIVE LAW AND ANALYSIS

Assessors are required by law to determine the RMV of every parcel of real property every year, as of January 1 at 1:00 a.m. *See* ORS 308.210(1). Assessors commonly make this determination using "mass appraisal" techniques, including "trending," rather than conducting an individualized appraisal based on a physical inspection of every parcel, every year. *See Freitag v. Dept. of Rev.*, 19 OTR 337, 338 (2007) (discussing Defendant's mass appraisal manual for assessors); ORS 309.115(1) to (2)(b) (generally freezing RMV for five years after adjudication, but providing exceptions for adjustments due to "[a]nnual trending or indexing applied to all properties of the same property class in the county, or within clearly defined areas of the county").

However, the RMV assigned on the roll does not bind either the taxpayer or the assessor in litigation. Either party may seek to prove a different value at trial, and a party doing so bears the burden of proof. *See PacifiCorp v. Dept. of Rev.*, 25 OTR 227, 245-252 (2023) *rev'd on other grounds*, 374 Or 189 (2025). The burden is to "provide competent evidence of the RMV of [the] property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). Providing competent evidence means more than merely "criticiz[ing] the county's position," or even "ma[king] some

good points" when cross-examining the county's appraiser. *King v. Dept. of Rev.*, 12 OTR 491, 492 (1993). A taxpayer challenging the RMV on the roll must prove that the property is overtaxed, by affirmatively proving RMV from the "bottom up," in a way that considers the sales comparison, cost, and income approaches. *See* OAR 150-308-0240(2)(a).

Because the RMV on the roll is nonbinding in litigation, neither the roll value, nor any formula used in mass appraisal or otherwise, sets a baseline from which a taxpayer may seek a subtraction, or to which an assessor may seek an addition, by proving only that some attribute of the property justifies a discount or a premium of a specific amount. *See Freitag*, 19 OTR at 338 (awarding attorney fees to county based on taxpayer's insistence on use of a mass appraisal technique) ("Although mass appraisal is a technique that has a role in the general administration of the property tax laws, once litigation occurs regarding the RMV of any property, the matter is a question of fact to be established in the litigation process."); *Covington v. Dept. of Rev.,* 24 OTR 77, 79 (2020) (concluding that the court could not make a "limited adjustment" to the property's RMV based on taxpayer's allegation of a change in view). It is insufficient to start with the assessor's RMV and argue for a discount.

Yet Plaintiff has settled on a theory that does just that. The prayer for relief in his Third Amended Complaint states in full:

> "THEREFORE, For the reasons stated above Plaintiff asks this court for a judgment declaring that Assessor must recalculate the RMV on the subject property by removing added value for the 90 and more degrees of views the subject house and property do not have, and recalculate property value comparisons to two property sales. Evidence in Exhibit 7 indicates that a plus value of 115 percent was added to the value of the land of the subject property due to an alleged ocean view. This is the amount of value that must be removed from the valuation of the subject property because that view does not exist."

(Ptf's 3d Am Compl at 2.)[7]  It is not for the County to "recalculate" the subject property's RMV, it is Plaintiff's burden to prove RMV.

## IV. APPLICATION OF DISCRETIONARY FACTORS

### A. *Plaintiff's Own Actions; Court Warnings*

As is customary with taxpayers not represented by counsel, the court expressly informed Plaintiff, in a case management conference with all parties early in the case, that he bears the burden of proving any RMV lower than the RMV shown on the roll.  The court followed up with a letter directing him to caselaw that illustrates the point.  Intermediate orders applied these legal principles to Plaintiff's facts.  Unmoved, Plaintiff persists in seeking to argue a theory about flaws in the methods the County used to determine the RMV on the roll, and he shows no intention to present a factual basis for the court to order a different RMV.

### B. *Practical likelihood that trial would lead to a result different from dismissal; availability of lesser, effective sanctions.*

Plaintiff has shown his determination to shrug off his burden of proof, retreat to the sidelines, and from there seek to criticize the County's methods, competence, and motives. Plaintiff did not request a trial continuance, much less show good cause for one, nor is there any reason to think that a continuance would remediate Plaintiff's unwillingness to present evidence, or even to use the County's evidence, to prove an RMV.  *See* TCR 52 D (1) ("When a case is set for trial, it will be tried or dismissed, unless good cause is shown for a postponement.").

---

[7] Plaintiff also alleges that the County mistakenly treated the amount he paid for two parcels in 2021 ($400,000) as an indicator of the value of just the one parcel at issue in this case. (*See id.* at 1-2, ¶¶ 3, 6.)  The County admits that "Plaintiff purchased the subject property together with the adjoining lot in February 2021 for $400,000." (Inv's Answer 3d Am Compl at 2, ¶ 6.)  But without proof from Plaintiff of the actual RMV of the subject property, any such mistake is irrelevant.

Although Plaintiff seeks to "rest" on his Third Amended Complaint, that is no alternative to trial. As the court explained to Plaintiff in the initial case management conference, RMV is an issue of fact to which the Regular Division must apply the rules of evidence. The court cannot decide RMV based on unauthenticated documents to which an opposing party may have hearsay or relevance objections. The court is not aware of a way to remediate Plaintiff's behavior. Dismissal simply reflects that Plaintiff has announced his intention to make any trial a waste of resources.

## V. ATTORNEY FEES, COSTS AND DISBURSEMENTS; STATUTORY PENALTY

The court has, to date, deferred consideration of various requests for attorney fees. The court now intends to decide, before entry of a judgment, any claims for attorney fees or costs or disbursements, as well as any application of the penalty under ORS 305.437. *See* TCR 68 C. The court directs the parties to submit any claims for attorney fees on or before March 6, 2026, together with any claims for costs or disbursements. Any claim must be accompanied by a showing of whether and how each factor in ORS 20.075(1) and (2) applies. Any argument for or against application of the penalty under ORS 305.437 must likewise address the factors in ORS 20.075. Objections and responses will be allowed under TCR 68 C(4)(b).

## VI. CONCLUSION

Pursuant to TCR 54 B(1), dismissal for want of prosecution with prejudice is just, based on the court's consideration of the foregoing factors. Now, therefore,

IT IS ORDERED that the Defendant-Intervenor's Motion To Dismiss for Failure To Prosecute is granted, together with Defendant's Motion To Dismiss for Failure To Prosecute.

Dated this 6th day of February, 2026.

2/6/2026 1:01:23 PM

_____

Judge Robert T. Manicke

ORDER GRANTING DEFENDANT-INTERVENOR'S
AND DEFENDANT'S MOTIONS TO DISMISS FOR
FAILURE TO PROSECUTE  TC 5465